# EXHIBIT A

 **CT Corporation**

**Service of Process Transmittal**
03/04/2020
CT Log Number 537322887

TO:     BARBARA HYMAN
        CNA Financial Corporation
        151 N FRANKLIN ST
        CHICAGO, IL 60606-1821

RE:     **Process Served in California**

FOR:    Continental Casualty Company  (Domestic State: IL)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | ACADEMY OF COUNTRY MUSIC, ETC., PLTF. vs. CONTINENTAL CASUALTY COMPANY, ET AL., DFTS. |
| **DOCUMENT(S) SERVED:** | DEMAND, COMPLAINT, EXHIBIT(S) |
| **COURT/AGENCY:** | Los Angeles County - Superior Court - Hill Street, CA<br>Case # 20STCV07573 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 03/04/2020 at 14:58 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 calendar days after this summons and legal papers are served on you |
| **ATTORNEY(S) / SENDER(S):** | Kayla M. Robinson<br>PASICH LLP<br>10880 Wilshire Boulevard, Suite 2000<br>Los Angeles, CA 90024<br>424-313-7860 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 03/04/2020, Expected Purge Date: 03/09/2020<br><br>Image SOP<br><br>Email Notification,  BARBARA HYMAN  barbara.hyman@cna.com |
| **SIGNED:**<br>**ADDRESS:** | C T Corporation System<br>1999 Bryan St Ste 900<br>Dallas, TX 75201-3140 |
| **For Questions:** | 877-564-7529<br>MajorAccountTeam2@wolterskluwer.com |

Page 1 of  1 / MK

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Electronically FILED by Superior Court of California, County of Los Angeles on 02/24/2020 04:37 PM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Alvarez, Deputy Clerk
20STCV07573

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

| | |
|---|---|
| **NOTICE TO DEFENDANT:**<br>*(AVISO AL DEMANDADO):*<br><br>CONTINENTAL CASUALTY COMPANY, an Illinois corporation; and DOES 1 through 10,<br><br>**YOU ARE BEING SUED BY PLAINTIFF:**<br>*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*<br><br>ACADEMY OF COUNTRY MUSIC, a California nonprofit corporation, | **FOR COURT USE ONLY**<br>*(SOLO PARA USO DE LA CORTE)* |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Los Angeles Superior Court<br><br>111 N. Hill Street<br>Los Angeles, CA  90012 | **CASE NUMBER:**<br>*(Número del Caso):*<br><br>20STCV07573 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Kirk Pasich, Pasich LLP, 10880 Wilshire Blvd., Suite 2000, Los Angeles, CA 90024 (424) 313-7860

Sherri R. Carter Executive Officer / Clerk of Court

| DATE:<br>*(Fecha)* | 02/24/2020 | Clerk, by<br>*(Secretario)* _____ | N. Alvarez | , Deputy<br>*(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* an Illinois corporation *Continental Casualty Company*

   under: ☒ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)

   ☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 3/07/20

Page 1 of 1

Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

Electronically FILED by Superior Court of California, County of Los Angeles on 02/24/2020 04:37 PM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Alvarez,Deputy Clerk
20STCV07573

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Gregory Keosian

1  Kirk Pasich (SBN 94242)
   kpasich@pasichllp.com
2  Kayla M. Robinson (SBN 322061)
   krobinson@pasichllp.com
3  PASICH LLP
   10880 Wilshire Boulevard, Suite 2000
4  Los Angeles, California 90024
   Telephone:  (424) 313-7860
5  Facsimile:  (424) 313-7890

6  Attorneys for Plaintiff

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   FOR THE COUNTY OF LOS ANGELES

10

11 | ACADEMY OF COUNTRY MUSIC, a        | Case No.   20STCV07573
   | California nonprofit corporation,  |
12 |                                    | COMPLAINT FOR BREACH OF
   |              Plaintiff,             | CONTRACT; TORTIOUS BREACH OF
13 |                                    | THE COVENANT OF GOOD FAITH
   |      vs.                           | AND FAIR DEALING; AND
14 |                                    | DECLARATORY RELIEF
   | CONTINENTAL CASUALTY COMPANY,      |
15 | an Illinois corporation; and DOES 1 through | DEMAND FOR JURY TRIAL
   | 10,                                |
16 |                                    |
   |              Defendants.           |
17

18

19      Plaintiff Academy of Country Music complains of defendant Continental Casualty

20 Company, and alleges as follows:

21                          NATURE OF THE ACTION

22      1.      This is a lawsuit by the Academy to collect coverage promised under a liability

23 insurance policy.  This policy was intended to protect the Academy in the event of an employment

24 practices or other claim asserted against it by an employee or former employee.  Continental had a

25 duty to fully defend any potentially covered claim arising under the policy and to indemnify the

26 Academy for an award of damages arising from such claim.  However, when a former employee

27 of the Academy pursued a legal action against the Academy, Continental refused to honor fully its

28 duties, instead paying only a portion of the attorneys' fees reasonably and necessarily incurred in

COMPLAINT

1  defense of a covered arbitration and refusing to indemnify the Academy for any part of a

2  subsequent award.  As a result, the Academy has been deprived of significant benefits due and

3  owing under the Continental policy.

4  **THE PARTIES**

5  2.      The Academy is a California 501(c)(6) nonprofit corporation with its principal

6  place of business in Los Angeles County.  The Academy's mission is to "encourage, promote,

7  sponsor, initiate, and carry out plans, policies, and activities which will tend to further the

8  development, acceptance, and recognition of country and western music, its artists, musicians,

9  writers, and all other organizations and persons who are in any way connected with the field of

10  country and western music and its promotion thereof."

11  3.      The Academy is informed and believes, and on that basis alleges, that Continental

12  is an Illinois corporation authorized to transact, and transacting, business in California and the

13  County of Los Angeles.  The Academy also is informed and believes, and on that basis alleges,

14  that Continental is a member of the CNA group of companies.  Speaking on behalf of Continental

15  and its other member companies, CNA represents on its website that it "can help your company

16  mitigate exposure to costly employment claims and litigation . . . ." *Employment Practices*

17  *Liability*, Resources to Manage and Reduce Risk, https://www.cna.com/web/guest/cna/manage

18  riskexposure?siteArea=SA-ProfessionalManagementLiability/SA-Employment

19  PracticesLiablityEPL (last visited Jan. 28, 2020).  CNA also claims on behalf of Continental and

20  its other members companies, "With more than a century of experience, we've developed a

21  reputation for offering more than just a policy." *Employment Practices Liability*, Insurance

22  Products and Services, https://www.cna.com/web/guest/cna/ps/products/ct-anyemployment

23  practicesliabilityprodml/ (last visited Jan. 28, 2020); *Directors & Officers*, Insurance Products and

24  Services, https://www.cna.com/web/guest/cna/ps/products/ct-anydirectorsofficersprodml/ (last

25  visited Jan. 28, 2020).

26  4.      The Academy is ignorant of the true names and capacities, whether individual,

27  associate, partnership, corporate, or otherwise, of the defendants fictitiously designated in this

28  complaint as Does 1 through 10, and therefore sues those defendants by these fictitious names.

2

**COMPLAINT**

1    The Academy will seek leave of court to amend this complaint when the true names and capacities
2    of these defendants have been ascertained.  The Academy is informed and believes, and on that
3    basis alleges, that Does 1 through 10, in some way unknown to the Academy, have underwritten
4    or provided insurance coverage to the Academy, or are otherwise responsible for losses alleged in
5    this complaint, and that Does 1 through 10 are authorized to, and do, transact insurance business in
6    California and the County of Los Angeles.

7                                       **THE POLICY**

8         5.        Continental issued policy number 596415107 to the Academy for the February 1,
9    2016, to February 1, 2017, policy period.  The Policy provides $2,000,000 in liability coverage,
10   subject to a $25,000 retention under the Employment Practices Coverage Part and a $10,000
11   retention under the Directors & Officers Liability Coverage Part.  A true and correct copy of the
12   Policy is attached as Exhibit 1 and is incorporated by reference.

13        6.        The Policy provides Employment Practices Liability ("EPL") coverage, promising
14   that Continental will

15              pay on behalf of **Insured** that **Loss**, in excess of the retention and
                up to the applicable limit of liability, resulting from any **Claim**
16              first made against the **Insureds** during the **Policy Period** or the
                Extended Reporting Period, if applicable, by or on behalf of . . . a
17              natural person who is an **Employee** or an applicant for
                employment for a **Wrongful Employment Practice** as described
18              in paragraphs 1. through 11. of the definition of **Wrongful**
19              **Employment Practice**. . . .

20   Policy, EPL Coverage Part § I.A.  "**Claim**" is defined to include "a written demand for monetary
21   damages or non-monetary relief (including demands for injunctive or declaratory relief) against an
22   **Insured** alleging a **Wrongful Act**," including "a civil proceeding in a court of law or equity or any
23   alternative dispute resolution proceeding . . . against an **Insured**, alleging a **Wrongful**
24   **Employment Practice** . . . ."  Policy, Glossary of Defined Terms, at 1–2.  "**Employee** means all
25   past, present or future full-time or part-time employees of the **Insured Entity**, including seasonal
26   and temporary employees and employees leased or loaned to the **Insured Entity** and including any
27   volunteers or committee members of the **Insured Entity**."  *Id.* at 4, as amended by End. No. 8.
28

                                            3
                                       **COMPLAINT**

7.      A "**Wrongful Employment Practice** means any **Wrongful Act** constituting or relating to," among other things, "breach of a written contract of employment." *Id.* at 13.  For purposes of the EPL Coverage Part, "**Wrongful Act**" includes "any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed or attempted by the **Insured Persons** in their capacity as such or by an **Insured Entity**." *Id.* at 12. "**Loss**" includes:

> 1. damages, settlements, judgments (including any award of pre-judgment and post-judgment interest on a covered judgment) and **Defense Costs** for which the **Insured** is legally obligated to pay on account of a covered **Claim**; and
> 2. punitive and exemplary damages and the multiplied portion of multiplied awards (subject to this Policy's other terms, conditions and limitations). . . .

*Id.* at 5.  For purposes of the EPL Coverage Part, "**Loss** also includes back pay and front pay, and liquidated damages awarded pursuant to the Age Discrimination in Employment Act or the Equal Pay Act." *Id.* at 6.

7.      The Policy also provides Directors & Officers Liability ("D&O") coverage, promising that Continental will "pay on behalf of **Insured Entity** that **Loss**, in excess of the retention (if any) and up to the applicable limit of liability, resulting from any **Claim** first made during the **Policy Period** or the Extended Reporting Period, if applicable, against the **Insured Entity** for a **Wrongful Act**." Policy, D&O Coverage Part § I.C.  For purposes of the D&O Coverage Part, "**Wrongful Act**" includes "any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty (including **Personal Injury/Proprietary Injury** and violations of the privacy provisions of the Health Insurance Portability and Accountability Act (HIPAA)) committed or attempted by" the Academy.  Policy, Glossary of Defined Terms, at 12.  The D&O Coverage Part contains an exclusion for **Loss** in connection with "any **Claim** made against any **Insured** . . . by or on behalf of any **Insured Entity** in any capacity . . . ." Policy, D&O Coverage Part § II.A.2.  However, this exclusion, by its express terms, does not apply to "any **Claim** that is in the form of a cross claim, third-party claim or otherwise for contribution or indemnity which is part of and results directly from a **Claim** which is not otherwise excluded under this Policy." *Id.*

4

pile

1      8.     The Policy provides that Continental has the "duty to defend all **Claims** even if the
2  allegations are groundless, false or fraudulent." Policy, General Terms and Conditions § XXI.A.,
3  as amended by End. No. 7.

4                                    **THE ARBITRATION**

5      9.     In early 2016, a controversy arose regarding the employment of an Academy
6  executive. At the time, the executive was serving the third year of a four-year year term provided
7  by an Employment Agreement. To resolve their dispute, the parties ultimately entered into a
8  "Separation Agreement and General Release," executed on June 3, 2016. The Agreement
9  provided that the executive would step down but would be available in a transitional capacity until
10  August 31, 2017, a date denoted the "Termination Date." In consideration for entering into the
11  Separation Agreement and for releasing claims against the Academy, the Academy agreed: (1) to
12  pay the executive amounts of money equal to the executive's "Base Salary" and car allowance
13  through the Termination Date; (2) to maintain the executive's company-sponsored health coverage
14  through the Termination Date; and (3) to pay the executive an additional lump sum in June 2016.

15      10.    On September 16, 2016, after an internal investigation, the Academy terminated
16  payments to the executive under the Separation Agreement, though the Academy continued to pay
17  health care premiums. In November 2016, an attorney for the executive sent a letter to the
18  Academy demanding that the Academy reinstate payments owed under the Separation Agreement.

19      11.    On December 6, 2016, the executive filed a demand for arbitration, setting forth
20  claims for, among other things, breach of contract and breach of the implied covenant of good
21  faith and fair dealing. The dispute proceeded to a confidential arbitration (the "Arbitration"), in
22  which the Academy filed a cross-complaint. The arbitrator ultimately entered an award in favor
23  of the executive, though the Academy prevailed in multiple of its legal arguments and was
24  adjudged entitled to a partial damages offset.

25                **CONTINENTAL'S BREACHES OF ITS DUTIES**

26      12.    Upon receipt of the executive's claim, the Academy promptly notified Continental.
27  By a January 10, 2017, letter, Continental agreed to defend the Academy pursuant to a reservation
28  of rights. However, Continental asserted it would not provide any coverage for damages or relief

1  sought against the Academy because "such damages or relief . . . do not constitute Loss under the
2  Policy. . . ." Continental only considered whether there was coverage under the EPL Coverage
3  Part.

4      13.    Five months later, by a June 20, 2017, letter, Continental denied owing the
5  Academy any duty to pay for fees and costs incurred in the Academy's pursuit of its cross-
6  complaint against the executive, even though prosecution of the cross-complaint was reasonable
7  and necessary to the defense of the executive's claim and even though Continental had agreed, by
8  the exception to its D&O exclusion, to pay for cross-claims resulting from an otherwise covered
9  claim, such as the executive's claim.

10      14.    After the Arbitration award was finalized, Continental refused to indemnify the
11  Academy for any part of the award. In fact, in a July 2019 e-mail, CNA stated that it "would not
12  indemnify any portion of the [Arbitration] award for this matter."

13      15.    Thereafter, over the course of several months, the Academy and Continental
14  exchanged correspondence, with the Academy explaining why Continental was wrong in denying
15  coverage and asking Continental to withdraw its denial and with Continental refusing to change its
16  position.

17      16.    As a result of Continental's improper and wrongful denial of coverage, the
18  Academy has been forced to pay significant sums above the Policy retention, sums that should
19  have been paid by Continental. Therefore, Continental has deprived the Academy of the insurance
20  coverage and benefits that it promised to provide and to which the Academy is entitled.

21      17.    To the extent not waived or otherwise excused, the Academy has complied with all
22  terms and conditions precedent contained in the Policy. Therefore, the Academy is entitled to all
23  benefits of insurance provided by the Policy.

24          **FIRST CAUSE OF ACTION**
25          **(Breach of Contract against Continental)**
26      18.    The Academy realleges and incorporates by reference paragraphs 1 through 17
27  above.

28

PASICH

19.     Continental had a duty to pay, up to the Policy's limit, reasonable and necessary defense costs and indemnity for the award entered in the Arbitration.

20.     Continental breached its duties owed to the Academy by, among other things, asserting grounds for limiting or denying coverage that it knew, or should have known, are not supported by, and in fact are contrary to, the terms of the Policy, the law, insurance industry custom and practices, and the facts and otherwise refusing to perform duties under the Policy.

21.     As a direct and proximate result of Continental's breach of contract, the Academy has sustained damages in an amount exceeding this Court's jurisdictional limit, to be determined at trial.

## SECOND CAUSE OF ACTION

### (Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing against Continental)

22.     The Academy realleges and incorporates by reference paragraphs 1 through 17, 19, and 20 above.

23.     Implied in the Policy was a covenant that Continental would act in good faith and deal fairly with the Academy, that Continental would do nothing to interfere with the rights of the Academy to receive benefits due under the Policy, and that Continental would give at least the same level of consideration to the Academy's interests as it gave to its own interests.

24.     Continental also had a duty under the Policy, the law, and insurance industry custom, practice, and standards to conduct a prompt and thorough investigation, including as to all bases that might support the Academy's claim for insurance coverage before reserving rights to deny, and denying, coverage.

25.     Instead of complying with these duties, Continental breached its implied covenant of good faith and fair dealing by, among other things:

   a.   failing to promptly conduct a full and thorough investigation of the Academy executive's claims and the Academy's claim for insurance coverage, and asserting grounds for denying coverage without conducting that investigation;

   b.   wrongfully and unreasonably asserting grounds for limiting coverage that

7
**COMPLAINT**

   Continental knew, or should have known, are not supported by, and in fact are contrary to, the terms of the Policy, the law, insurance industry custom and practice, and the facts;

  c. failing to fully inquire into bases that might support coverage for the Arbitration;

  d. unreasonably failing and refusing to honor its promises and representations in the Policy;

  e. giving greater consideration to its own interests than it gave to the Academy's interests;

  f. otherwise acting as alleged above.

26. In breach of the implied covenant of good faith and fair dealing, Continental did the things and committed the acts alleged above, consciously withholding from the Academy the rights and benefits to which it is and was entitled under the Policy.

27. Continental's actions are inconsistent with the reasonable expectations of the Academy, are contrary to established industry custom and practice, are contrary to legal requirements, are contrary to the express terms of the Policy, and constitute bad faith.

28. As a direct and proximate result of Continental's actions, the Academy has been damaged in an amount exceeding the Court's jurisdictional limits. Also, pursuant to *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985), the Academy is entitled to recover as damages all attorneys' fees that it has reasonably incurred, and continues to incur, in its efforts to obtain the benefits due under the Policy that Continental has withheld, and is withholding, in bad faith. The Academy also is entitled to interest at the maximum legal rate.

29. Continental's conduct is despicable and has been done with a conscious disregard of the Academy's rights, constituting oppression, fraud, and/or malice. Continental has engaged in a series of acts designed to deny the Academy the benefits due under the Policy. Specifically, Continental, by acting as alleged above, in light of information, facts, and relevant law to the contrary, consciously disregarded the Academy's rights and forced the Academy to incur substantial financial losses, thereby inflicting substantial financial damage on the Academy.

1  Continental ignored the Academy's interests and concerns with the requisite intent to injure within
2  the meaning of California Civil Code section 3294.  The Academy is informed and believes, and
3  on that basis alleges, that Continental—acting through one or more of its third-party agents and/or
4  its officers, directors, or other corporate employees with substantial independent and discretionary
5  authority over significant aspects of Continental's business—performed, authorized, and/or
6  ratified the bad faith conduct alleged above.  Therefore, the Academy is entitled to recover
7  punitive damages from Continental in an amount sufficient to punish and to make an example of
8  Continental and to deter similar conduct in the future.

9                                    **THIRD CAUSE OF ACTION**

10                           **(Declaratory Relief against Does 1 through 10)**

11        30.     The Academy realleges and incorporates by reference paragraphs 1 through 17
12  above.

13        31.     The Academy contends that it was entitled to a full defense and indemnity with
14  respect to the Arbitration.  The Academy is informed and believes, and on that basis alleges, that
15  Does 1 through 10 dispute that the Academy was entitled to a defense and indemnity with respect
16  to the Arbitration.  Therefore, an actual and justiciable controversy exists between the Academy
17  and Does 1 through 10 concerning the matters alleged in this complaint.

18        32.     The Academy seeks a judicial declaration as to the duties of Does 1 through 10,
19  including their duties to provide a defense and indemnity in the Arbitration, confirming that the
20  Academy's contentions, as stated above, are correct.  A declaration is necessary in order that the
21  parties' dispute may be resolved and that they may be aware of their respective rights and duties.

22                                    **PRAYER FOR RELIEF**

23        WHEREFORE, the Academy prays for relief as follows:

24                           **ON THE FIRST CAUSE OF ACTION**

25  1.      For damages according to proof at the time of trial, plus interest;

26                           **ON THE SECOND CAUSE OF ACTION**

27  2.      For damages according to proof at the time of trial, including the reasonable
28  attorneys' fees incurred in obtaining the benefits due under the Policy, plus interest;

                                         9
                                    **COMPLAINT**

PASICH

3.   For punitive damages in an amount to be determined at the time of trial;

**ON THE THIRD CAUSE OF ACTION**

4.   For a declaration in accord with the Academy's contentions stated above;

**ON ALL CAUSES OF ACTION**

5.   For costs of suit herein; and

6.   For such other, further, and/or different relief as may be deemed just and proper.

DATED: February 24, 2020

PASICH LLP

By: _____
    Kayla M. Robinson

    Attorneys for Plaintiff

---

10

**COMPLAINT**

1

## DEMAND FOR JURY TRIAL

2    Academy of Country Music hereby demands a trial by jury in this action.

3  DATED:  February 24, 2020                    PASICH LLP

4
                                        By: _____
5                                            Kayla M. Robinson

6                                            Attorneys for Plaintiff

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                     11
                                 **COMPLAINT**

Electronically FILED by Superior Court of California, County of Los Angeles on 03/03/2020 05:35 PM Sherri R. Carter, Executive Officer/Clerk of Court, by D. Ramirez, Deputy Clerk

1  Kirk Pasich (SBN 94242)
   kpasich@pasichllp.com
2  Kayla M. Robinson (SBN 322061)
   krobinson@pasichllp.com
3  PASICH LLP
   10880 Wilshire Boulevard, Suite 2000
4  Los Angeles, California 90024
   Telephone: (424) 313-7860
5  Facsimile: (424) 313-7890

6  Attorneys for Plaintiff

7

8             SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                 FOR THE COUNTY OF LOS ANGELES

10

11 ACADEMY OF COUNTRY MUSIC, a              Case No. 20STCV07573
   California nonprofit corporation,
12                                          **CORRECTED COMPLAINT FOR
                  Plaintiff,                BREACH OF CONTRACT; TORTIOUS
13                                          BREACH OF THE COVENANT OF
           vs.                              GOOD FAITH AND FAIR DEALING;
14                                          AND DECLARATORY RELIEF**
   CONTINENTAL CASUALTY COMPANY,
15 an Illinois corporation; and DOES 1 through   **DEMAND FOR JURY TRIAL**
   10,
16
                  Defendants.
17

18

19         Plaintiff Academy of Country Music complains of defendant Continental Casualty

20 Company, and alleges as follows:

21                        **NATURE OF THE ACTION**

22         1.     This is a lawsuit by the Academy to collect coverage promised under a liability

23 insurance policy. This policy was intended to protect the Academy in the event of an employment

24 practices or other claim asserted against it by an employee or former employee. Continental had a

25 duty to fully defend any potentially covered claim arising under the policy and to indemnify the

26 Academy for an award of damages arising from such claim. However, when a former employee

27 of the Academy pursued a legal action against the Academy, Continental refused to honor fully its

28 duties, instead paying only a portion of the attorneys' fees reasonably and necessarily incurred in

PASICH

                              CORRECTED COMPLAINT

1  defense of a covered arbitration and refusing to indemnify the Academy for any part of a

2  subsequent award.  As a result, the Academy has been deprived of significant benefits due and

3  owing under the Continental policy.

4                                        **THE PARTIES**

5          2.       The Academy is a California 501(c)(6) nonprofit corporation with its principal

6  place of business in Los Angeles County.  The Academy's mission is to "encourage, promote,

7  sponsor, initiate, and carry out plans, policies, and activities which will tend to further the

8  development, acceptance, and recognition of country and western music, its artists, musicians,

9  writers, and all other organizations and persons who are in any way connected with the field of

10  country and western music and its promotion thereof."

11          3.       The Academy is informed and believes, and on that basis alleges, that Continental

12  is an Illinois corporation authorized to transact, and transacting, business in California and the

13  County of Los Angeles.  The Academy also is informed and believes, and on that basis alleges,

14  that Continental is a member of the CNA group of companies.  Speaking on behalf of Continental

15  and its other member companies, CNA represents on its website that it "can help your company

16  mitigate exposure to costly employment claims and litigation . . . ." *Employment Practices*

17  *Liability*, Resources to Manage and Reduce Risk, https://www.cna.com/web/guest/cna/manage

18  riskexposure?siteArea=SA-ProfessionalManagementLiability/SA-Employment

19  PracticesLiablityEPL (last visited Jan. 28, 2020).  CNA also claims on behalf of Continental and

20  its other members companies, "With more than a century of experience, we've developed a

21  reputation for offering more than just a policy." *Employment Practices Liability*, Insurance

22  Products and Services, https://www.cna.com/web/guest/cna/ps/products/ct-anyemployment

23  practicesliabilityprodml/ (last visited Jan. 28, 2020); *Directors & Officers*, Insurance Products and

24  Services, https://www.cna.com/web/guest/cna/ps/products/ct-anydirectorsofficersprodml/ (last

25  visited Jan. 28, 2020).

26          4.       The Academy is ignorant of the true names and capacities, whether individual,

27  associate, partnership, corporate, or otherwise, of the defendants fictitiously designated in this

28  complaint as Does I through 10, and therefore sues those defendants by these fictitious names.

PASICH

2
**CORRECTED COMPLAINT**

1  The Academy will seek leave of court to amend this complaint when the true names and capacities

2  of these defendants have been ascertained.  The Academy is informed and believes, and on that

3  basis alleges, that Does 1 through 10, in some way unknown to the Academy, have underwritten

4  or provided insurance coverage to the Academy, or are otherwise responsible for losses alleged in

5  this complaint, and that Does 1 through 10 are authorized to, and do, transact insurance business in

6  California and the County of Los Angeles.

7  **THE POLICY**

8         5.      Continental issued policy number 596415107 to the Academy for the February 1,

9  2016, to February 1, 2017, policy period.  The Policy provides $2,000,000 in liability coverage,

10  subject to a $25,000 retention under the Employment Practices Coverage Part and a $10,000

11  retention under the Directors & Officers Liability Coverage Part.  A true and correct copy of the

12  Policy is attached as Exhibit 1 and is incorporated by reference.

13         6.      The Policy provides Employment Practices Liability ("EPL") coverage, promising

14  that Continental will

15              pay on behalf of **Insured** that **Loss**, in excess of the retention and
               up to the applicable limit of liability, resulting from any **Claim**
16              first made against the **Insureds** during the **Policy Period** or the
               Extended Reporting Period, if applicable, by or on behalf of . . . a
17              natural person who is an **Employee** or an applicant for
               employment for a **Wrongful Employment Practice** as described
18              in paragraphs 1. through 11. of the definition of **Wrongful**
19              **Employment Practice**. . . .

20  Policy, EPL Coverage Part § 1.A.  "**Claim**" is defined to include "a written demand for monetary

21  damages or non-monetary relief (including demands for injunctive or declaratory relief) against an

22  **Insured** alleging a **Wrongful Act**," including "a civil proceeding in a court of law or equity or any

23  alternative dispute resolution proceeding . . . against an **Insured**, alleging a **Wrongful**

24  **Employment Practice** . . . ."  Policy, Glossary of Defined Terms, at 1–2.  "**Employee** means all

25  past, present or future full-time or part-time employees of the **Insured Entity**, including seasonal

26  and temporary employees and employees leased or loaned to the **Insured Entity** and including any

27  volunteers or committee members of the **Insured Entity**."  *Id.* at 4, as amended by End. No. 8.

28

PASICH₂

7. A **"Wrongful Employment Practice** means any **Wrongful Act** constituting or relating to," among other things, "breach of a written contract of employment." *Id.* at 13. For purposes of the EPL Coverage Part, **"Wrongful Act"** includes "any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed or attempted by the **Insured Persons** in their capacity as such or by an **Insured Entity**." *Id.* at 12. **"Loss"** includes:

> 1. damages, settlements, judgments (including any award of pre-judgment and post-judgment interest on a covered judgment) and **Defense Costs** for which the **Insured** is legally obligated to pay on account of a covered **Claim**; and
> 2. punitive and exemplary damages and the multiplied portion of multiplied awards (subject to this Policy's other terms, conditions and limitations). . . .

*Id.* at 5. For purposes of the EPL Coverage Part, **"Loss** also includes back pay and front pay, and liquidated damages awarded pursuant to the Age Discrimination in Employment Act or the Equal Pay Act." *Id.* at 6.

7. The Policy also provides Directors & Officers Liability ("D&O") coverage, promising that Continental will "pay on behalf of **Insured Entity** that **Loss**, in excess of the retention (if any) and up to the applicable limit of liability, resulting from any **Claim** first made during the **Policy Period** or the Extended Reporting Period, if applicable, against the **Insured Entity** for a **Wrongful Act**." Policy, D&O Coverage Part § I.C. For purposes of the D&O Coverage Part, **"Wrongful Act"** includes "any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty (including **Personal Injury/Proprietary Injury** and violations of the privacy provisions of the Health Insurance Portability and Accountability Act (HIPAA)) committed or attempted by" the Academy. Policy, Glossary of Defined Terms, at 12. The D&O Coverage Part contains an exclusion for Loss in connection with "any **Claim** made against any **Insured** . . . by or on behalf of any **Insured Entity** in any capacity . . . ." Policy, D&O Coverage Part § II.A.2. However, this exclusion, by its express terms, does not apply to "any **Claim** that is in the form of a cross claim, third-party claim or otherwise for contribution or indemnity which is part of and results directly from a **Claim** which is not otherwise excluded under this Policy." *Id.*

4

**CORRECTED COMPLAINT**

1    8.    The Policy provides that Continental has the "duty to defend all **Claims** even if the

2  allegations are groundless, false or fraudulent."  Policy, General Terms and Conditions § XXI.A.,

3  as amended by End. No. 7.

4                                 **THE ARBITRATION**

5    9.    In early 2016, a controversy arose regarding the employment of an Academy

6  executive.  At the time, the executive was serving the third year of a four-year year term provided

7  by an Employment Agreement.  To resolve their dispute, the parties ultimately entered into a

8  "Separation Agreement and General Release," executed on June 3, 2016.  The Agreement

9  provided that the executive would step down but would be available in a transitional capacity until

10  August 31, 2017, a date denoted the "Termination Date."  In consideration for entering into the

11  Separation Agreement and for releasing claims against the Academy, the Academy agreed:  (1) to

12  pay the executive amounts of money equal to the executive's "Base Salary" and car allowance

13  through the Termination Date; (2) to maintain the executive's company-sponsored health coverage

14  through the Termination Date; and (3) to pay the executive an additional lump sum in June 2016.

15    10.    On September 16, 2016, after an internal investigation, the Academy terminated

16  payments to the executive under the Separation Agreement, though the Academy continued to pay

17  health care premiums.  In November 2016, an attorney for the executive sent a letter to the

18  Academy demanding that the Academy reinstate payments owed under the Separation Agreement.

19    11.    On December 6, 2016, the executive filed a demand for arbitration, setting forth

20  claims for, among other things, breach of contract and breach of the implied covenant of good

21  faith and fair dealing.  The dispute proceeded to a confidential arbitration (the "Arbitration"), in

22  which the Academy filed a cross-complaint.   The arbitrator ultimately entered an award in favor

23  of the executive, though the Academy prevailed in multiple of its legal arguments and was

24  adjudged entitled to a partial damages offset.

25                      **CONTINENTAL'S BREACHES OF ITS DUTIES**

26    12.    Upon receipt of the executive's claim, the Academy promptly notified Continental.

27  By a January 10, 2017, letter, Continental agreed to defend the Academy pursuant to a reservation

28  of rights.  However, Continental asserted it would not provide any coverage for damages or relief

1  sought against the Academy because "such damages or relief . . . do not constitute Loss under the
2  Policy. . . ." Continental only considered whether there was coverage under the EPL Coverage
3  Part.

4         13.     Five months later, by a June 20, 2017, letter, Continental denied owing the
5  Academy any duty to pay for fees and costs incurred in the Academy's pursuit of its cross-
6  complaint against the executive, even though prosecution of the cross-complaint was reasonable
7  and necessary to the defense of the executive's claim and even though Continental had agreed, by
8  the exception to its D&O exclusion, to pay for cross-claims resulting from an otherwise covered
9  claim, such as the executive's claim.

10         14.     After the Arbitration award was finalized, Continental refused to indemnify the
11  Academy for any part of the award. In fact, in a July 2019 e-mail, CNA stated that it "would not
12  indemnify any portion of the [Arbitration] award for this matter."

13         15.     Thereafter, over the course of several months, the Academy and Continental
14  exchanged correspondence, with the Academy explaining why Continental was wrong in denying
15  coverage and asking Continental to withdraw its denial and with Continental refusing to change its
16  position.

17         16.     As a result of Continental's improper and wrongful denial of coverage, the
18  Academy has been forced to pay significant sums above the Policy retention, sums that should
19  have been paid by Continental. Therefore, Continental has deprived the Academy of the insurance
20  coverage and benefits that it promised to provide and to which the Academy is entitled.

21         17.     To the extent not waived or otherwise excused, the Academy has complied with all
22  terms and conditions precedent contained in the Policy. Therefore, the Academy is entitled to all
23  benefits of insurance provided by the Policy.

24  **FIRST CAUSE OF ACTION**

25  **(Breach of Contract against Continental)**

26         18.     The Academy realleges and incorporates by reference paragraphs 1 through 17
27  above.

28

PASICH,

1    19.    Continental had a duty to pay, up to the Policy's limit, reasonable and necessary

2  defense costs and indemnity for the award entered in the Arbitration.

3    20.    Continental breached its duties owed to the Academy by, among other things,

4  asserting grounds for limiting or denying coverage that it knew, or should have known, are not

5  supported by, and in fact are contrary to, the terms of the Policy, the law, insurance industry

6  custom and practices, and the facts and otherwise refusing to perform duties under the Policy.

7    21.    As a direct and proximate result of Continental's breach of contract, the Academy

8  has sustained damages in an amount exceeding this Court's jurisdictional limit, to be determined

9  at trial.

10                        **SECOND CAUSE OF ACTION**

11          **(Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing**

12                               **against Continental)**

13    22.    The Academy realleges and incorporates by reference paragraphs 1 through 17, 19,

14  and 20 above.

15    23.    Implied in the Policy was a covenant that Continental would act in good faith and

16  deal fairly with the Academy, that Continental would do nothing to interfere with the rights of the

17  Academy to receive benefits due under the Policy, and that Continental would give at least the

18  same level of consideration to the Academy's interests as it gave to its own interests.

19    24.    Continental also had a duty under the Policy, the law, and insurance industry

20  custom, practice, and standards to conduct a prompt and thorough investigation, including as to all

21  bases that might support the Academy's claim for insurance coverage before reserving rights to

22  deny, and denying, coverage.

23    25.    Instead of complying with these duties, Continental breached its implied covenant

24  of good faith and fair dealing by, among other things:

25          a.  failing to promptly conduct a full and thorough investigation of the Academy

26              executive's claims and the Academy's claim for insurance coverage, and

27              asserting grounds for denying coverage without conducting that investigation;

28          b.  wrongfully and unreasonably asserting grounds for limiting coverage that

                                          7

PASICH

1   Continental knew, or should have known, are not supported by, and in fact are

2   contrary to, the terms of the Policy, the law, insurance industry custom and

3   practice, and the facts;

4   c.   failing to fully inquire into bases that might support coverage for the

5   Arbitration;

6   d.   unreasonably failing and refusing to honor its promises and representations in

7   the Policy;

8   e.   giving greater consideration to its own interests than it gave to the Academy's

9   interests;

10   f.   otherwise acting as alleged above.

11   26.   In breach of the implied covenant of good faith and fair dealing, Continental did the

12   things and committed the acts alleged above, consciously withholding from the Academy the

13   rights and benefits to which it is and was entitled under the Policy.

14   27.   Continental's actions are inconsistent with the reasonable expectations of the

15   Academy, are contrary to established industry custom and practice, are contrary to legal

16   requirements, are contrary to the express terms of the Policy, and constitute bad faith.

17   28.   As a direct and proximate result of Continental's actions, the Academy has been

18   damaged in an amount exceeding the Court's jurisdictional limits.  Also, pursuant to *Brandt v.*

19   *Superior Court*, 37 Cal. 3d 813 (1985), the Academy is entitled to recover as damages all

20   attorneys' fees that it has reasonably incurred, and continues to incur, in its efforts to obtain the

21   benefits due under the Policy that Continental has withheld, and is withholding, in bad faith.  The

22   Academy also is entitled to interest at the maximum legal rate.

23   29.   Continental's conduct is despicable and has been done with a conscious disregard

24   of the Academy's rights, constituting oppression, fraud, and/or malice.  Continental has engaged

25   in a series of acts designed to deny the Academy the benefits due under the Policy.  Specifically,

26   Continental, by acting as alleged above, in light of information, facts, and relevant law to the

27   contrary, consciously disregarded the Academy's rights and forced the Academy to incur

28   substantial financial losses, thereby inflicting substantial financial damage on the Academy.

8

1  Continental ignored the Academy's interests and concerns with the requisite intent to injure within
2  the meaning of California Civil Code section 3294.  The Academy is informed and believes, and
3  on that basis alleges, that Continental—acting through one or more of its third-party agents and/or
4  its officers, directors, or other corporate employees with substantial independent and discretionary
5  authority over significant aspects of Continental's business—performed, authorized, and/or
6  ratified the bad faith conduct alleged above.  Therefore, the Academy is entitled to recover
7  punitive damages from Continental in an amount sufficient to punish and to make an example of
8  Continental and to deter similar conduct in the future.

9                                    **THIRD CAUSE OF ACTION**

10                          **(Declaratory Relief against Does 1 through 10)**

11          30.     The Academy realleges and incorporates by reference paragraphs 1 through 17
12  above.

13          31.     The Academy contends that it was entitled to a full defense and indemnity with
14  respect to the Arbitration.  The Academy is informed and believes, and on that basis alleges, that
15  Does 1 through 10 dispute that the Academy was entitled to a defense and indemnity with respect
16  to the Arbitration.  Therefore, an actual and justiciable controversy exists between the Academy
17  and Does 1 through 10 concerning the matters alleged in this complaint.

18          32.     The Academy seeks a judicial declaration as to the duties of Does 1 through 10,
19  including their duties to provide a defense and indemnity in the Arbitration, confirming that the
20  Academy's contentions, as stated above, are correct.  A declaration is necessary in order that the
21  parties' dispute may be resolved and that they may be aware of their respective rights and duties.

22                                    **PRAYER FOR RELIEF**

23          WHEREFORE, the Academy prays for relief as follows:

24                          **ON THE FIRST CAUSE OF ACTION**

25          1.      For damages according to proof at the time of trial, plus interest;

26                          **ON THE SECOND CAUSE OF ACTION**

27          2.      For damages according to proof at the time of trial, including the reasonable
28  attorneys' fees incurred in obtaining the benefits due under the Policy, plus interest;

9

CORRECTED COMPLAINT

3.      For punitive damages in an amount to be determined at the time of trial;

**ON THE THIRD CAUSE OF ACTION**

4.      For a declaration in accord with the Academy's contentions stated above;

**ON ALL CAUSES OF ACTION**

5.      For costs of suit herein; and

6.      For such other, further, and/or different relief as may be deemed just and proper.

DATED:  March 2, 2020                              PASICH LLP

By: _____
                                        Kayla M. Robinson

                                        Attorneys for Plaintiff

---

10

**CORRECTED COMPLAINT**

# DEMAND FOR JURY TRIAL

Academy of Country Music hereby demands a trial by jury in this action.

DATED:  March 2, 2020

PASICH LLP

By: _____
Kayla M. Robinson

Attorneys for Plaintiff

11

**CORRECTED COMPLAINT**

EXHIBIT  1

# EXHIBIT 1





**Policy Declarations**

| | NAMED INSURED | PRODUCER |
|---|---|---|
| Item 1. | Academy of Country Music<br>5500 Balboa Blvd. Suite #200<br>Encino, CA 91316 | MARSH USA INC<br>Doreen A Miehlich, CPCU, RPLU<br>540 W MADISON, STE. 1200<br>CHICAGO, IL 060661 |
| Attn: | | |

| CUSTOMER NUMBER | |
|---|---|
| 654888 | Continental Casualty Company |
| **POLICY NUMBER** | 333 S. Wabash Ave.<br>Chicago, IL |
| 596415107 | 60604 |

Item 2. **Policy Period:** 2/1/2016 to 2/1/2017
        12:01 a.m. local time at the address stated in Item 1.

Item 3. **Policy Premium:** $7,368 (does not include Surcharges or Taxes, if applicable)

| Lines of Business | Policy Year Premium | Total Policy Premium |
|---|---|---|
| Management Liability - Not For Profit | $7,368 | $7,368 |

Item 4. **Coverage Parts and Endorsements:**

| | | |
|---|---|---|
| Epack Extra - Directors & Officers Liability Coverage Part | GSL24342XX | 01/2011 |
| Epack Extra - Fiduciary Liability Coverage Part | GSL12041XX | 03/2010 |
| Epack Extra - Employment Practices Liability Coverage Part | GSL12040XX | 03/2010 |
| Addition of Subsidiary Endorsement | G-139025-A | 03/2010 |
| Media Activity Exclusion | GSL24353XX | 01/2011 |
| Sublimit for Specified Coverage Part Endorsement for Use with a Single Limit of Liability | PRO3090G | 03/2010 |
| Professional Services Exclusion | GSL24356XX | 01/2011 |
| Copyright Exclusion | GSL8648XX | 03/2010 |
| Cancellation/Non-Renewal Endorsement - California | GSL-7541-CA | 11/2004 |
| Amend Defense Settlement And Consent | GSL-57799-XX | 02/2012 |
| Independent Contractors Coverage Endorsement | GSL24362XX | 01/2011 |
| Cap On Losses From Certified Acts Of Terrorism Endorsement | CNA-81751-XX | 03/2015 |
| Notice Offer Of Terrorism Coverage Disclosure Of Premium Confirmation Of Acceptance | CNA-81758-XX | 03/2015 |
| Amend Definition To Plan To Include Non-Qualified Plans Endorsement | CNA-79463-XX | 07/2014 |
| Amend Definition Of Administration Services Endorsement (Fiduciary Liability Coverage Part) | CNA-81101-XX | 03/2015 |
| Amend Definition Of Loss End (Patient Protection And Affordable Care Act And Health Care And Education Reconciliation Act Of 2010 With No Retention) | CNA-68912-XX | 07/2012 |
| Amend Definition Of Loss Endorsement (Sublimit For 15% Or Less Tax Penalty Under Section 4975 Of The Internal Revenue Code With No Retention) | CNA-77257-XX | 12/2013 |
| Amend Definition Of Loss Endorsement $100,000 Sublimit For Insurable Fines And Penalties Under Section 502 (C ) & Pension Protection Act | CNA-81120-XX | 03/2015 |
| Amend Supplementary Payments Section Endorsement $250,000 For Compliance Costs (Fiduci | | |

GSL12066c_032010

Page 1

© CNA All Rights Reserved





**Policy Declarations**

ary Liability Coverage Part)                                                          CNA-81081-XX   03/2015
Managed Care Services Endorsement (Fiduciary Liability Coverage Part)                 CNA-81618-XXC 03/2015
Denial Or Delay Of Benefits Endorsement (Fiduciary Liability Coverage Part)           CNA-81619-XX   03/2015

© CNA  All Rights Reserved





**Item 5.Notices of Claims to Insurer:**

CNA – Claims Reporting
P.O. Box 8317
Chicago, IL 60680-8317
Fax: 866-773-7504
Email: SpecialtyNewLoss@cna.com

These Declarations, along with the completed and signed Application, the Policy, and any written endorsements attached shall constitute the contract between the Insureds and the Insurer.

Authorized
Representative:

Date:

© CNA All Rights Reserved



 Extra

**Management Liability Coverage Part**
**Declarations**
**Not-For-Profit**

## NOTICE

**THE LIABILITY COVERAGE PARTS ARE WRITTEN ON A CLAIMS MADE BASIS, AND AS SUCH, TO ALL PROVISIONS, APPLIES ONLY TO ANY CLAIM FIRST MADE DURING THE POLICY PERIOD. NO COVERAGE EXISTS FOR CLAIMS FIRST MADE AFTER THE END OF THE POLICY PERIOD UNLESS, AND TO THE EXTENT THAT, THE EXTENDED REPORTING PERIOD APPLIES. DEFENSE COSTS REDUCE THE LIMIT OF LIABILITY AND ARE SUBJECT TO THE RETENTION. PLEASE REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

**Named Insured:** Academy of Country Music

**Policy Number:** 596415107        **Policy Period:** 2/1/2016 to 2/1/2017

Item 1. **Policy Year Limits of Liability and Retentions** (inclusive of **Defense Costs**). Regardless of the Option selected, as indicated by a checked box, please refer to the Coverage Schedule below for applicable Coverage Parts.

The Coverage Parts designated below are issued with the Limits of Liability and Retention Option selected below:

☑ Single Limit of Liability and Scheduled Retentions:
Single Limit of Liability                      $2,000,000
Scheduled Retentions                       Refer to Column 3 below

☐ Scheduled Limits of Liability and Scheduled
Retentions:                                    Refer to Column 2 below
Scheduled Limits of Liability             Refer to Column 3 below
Scheduled Retentions

| Coverage Part | Scheduled Limit of Liability | Retention | Prior and Pending Date | Prior Premium | Premium |
|---|---|---|---|---|---|
| D&O/Entity Liability - Not For Profit | | $10,000 | 01/01/2004 | $4,611 | $4,611 |
| Fiduciary Liability - Not For Profit | | $0 | 01/01/2011 | $705 | $705 |
| Employment Practices Liability - Not For Profit | | $25,000 | 01/01/2004 | $2,052 | $2,052 |

NOTE: The premium shown on this Declarations page does not include Surcharges or Taxes, if applicable

GSL24343XX 01-2011

© CNA  All Rights Reserved

Page 1



**Epack** Extra
**Management Liability Coverage Part**
**Declarations**
**Not-For-Profit**

Authorized Representative:    *John B. Brand*

Date:                1/15/2016

© CNA  All Rights Reserved




**GENERAL TERMS AND CONDITIONS**

The Insurer and the **Insureds**, in consideration of the payment of the premium and in reliance upon all statements made in the **Application** furnished to the Insurer designated in the Policy Declarations, a stock insurance corporation, hereafter called the "Insurer," agree as follows. Terms in bold face type have special meaning. See the Glossary of Defined Terms or the applicable Coverage Parts of this Policy.

| I. | TERMS AND CONDITIONS |
|---|---|

The terms and conditions of each **Coverage Part** apply only to that **Coverage Part** and shall not apply to any other **Coverage Part.** If any provision in the General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any **Coverage Part,** the terms and conditions of such **Coverage Part** shall control for purposes of that **Coverage Part**.

| II. | CANCELLATION |
|---|---|

#### A. **Insurer's Right to Cancel**

The Insurer shall not cancel this Policy except for non-payment of any premium when due. The Insurer shall provide to the **Named Insured** written notice of such cancellation stating when, not less than twenty (20) days thereafter, such cancellation shall be effective, except that non-payment of premium due at inception of this Policy will result in the policy being cancelled effective as of the effective date.

#### B. **Named Insured's Right to Cancel**

The **Insureds** grant the exclusive authority to cancel this Policy to the **Named Insured**. The **Named Insured** may cancel this Policy by providing the Insurer written notice stating when thereafter such cancellation shall be effective. The mailing or delivery of such notice shall be sufficient. The unearned premium shall be computed on a pro-rata basis and premium adjustment may be made at the time cancellation is effected or as soon as practicable.

| III. | NON-RENEWAL |
|---|---|

If the Insurer decides not to offer any renewal terms for this Policy, the Insurer shall provide written notice to the **Named Insured** at least sixty (60) days prior to the Policy expiration date. The notice shall include the reason for such non-renewal.

| IV. | NAMED INSURED AUTHORIZATION AND NOTICES TO THE NAMED INSURED |
|---|---|

The **Insureds** agree that the **Named Insured** will act on behalf of the **Insureds** with respect to giving of all notices to the Insurer (except pursuant to Section **XXII.** Paragraph **A. Notice of Claim or Privacy Event** or **B. Notice of Circumstance**), the receipt of notices from the Insurer, the payment of the premiums, the receipt of any return premiums that may become due under this Policy, and the acceptance of endorsements.

Copyright © CNA All Rights Reserved.





**GENERAL TERMS AND CONDITIONS**

Any notices required under Section **II. CANCELLATION,** and Section **III. NON-RENEWAL** shall be provided to the **Named Insured** at the last known address and to its insurance agent or broker. The mailing by certified mail of such notice shall be sufficient.

| V. | APPLICATION |
|----|-------------|

A. The **Insureds** represent and acknowledge that the statements contained in the **Application** (which shall be maintained on file by the Insurer and be deemed attached to and incorporated into this Policy as if physically attached), are true and are the basis of this Policy and are to be considered as incorporated into and constituting a part of this Policy. This Policy is issued in reliance upon the truth of such representations.

B. In the event the **Application** contains any misrepresentation or omission made with the intent to deceive, or which materially affects either the acceptance of the risk or the hazard assumed by the Insurer under the Policy then this Policy shall be voided as to:

1. the **Insured Entity**, if the Chief Executive Officer, Chairperson, Chief Financial Officer, President (or any equivalent position), or the signer of the **Application** knew of such misrepresentation or omission and,

2. any **Insured Persons** who knew of such misrepresentation or omission. Such knowledge shall not be imputed to any other **Insured Persons**.

Notwithstanding anything to the contrary in this Policy and solely to the extent there is a **Non-Indemnifiable Loss**, the Insurer shall not seek to rescind the Policy with respect to any **Insured Person** for any reason.

| VI. | CHANGES |
|-----|---------|

Notice to or knowledge possessed by any agent or other person acting on behalf of the Insurer shall not effect a waiver or a change in any part of this Policy or stop the Insurer from asserting any right under the provisions of this Policy, nor shall the provisions be waived or changed except by written endorsement issued to form a part of this Policy.

| VII. | NO ACTION AGAINST INSURER |
|------|---------------------------|

A. No action shall be taken against the Insurer unless, as a condition precedent, there shall have been full compliance with all the provisions of this Policy or until the amount of the **Insureds'** obligation to pay shall have been finally determined either by final and nonappealable judgment against the **Insureds** after trial or by written agreement of the **Insureds**, the claimant and the Insurer.

B. No person or organization shall have any right under this Policy to join the Insurer as a party to any **Claim** against the **Insureds** to determine the **Insureds'** liability, nor shall the Insurer be impleaded by the **Insureds** or their legal representatives in any such **Claim**.

| VIII. | ASSIGNMENT OF INTEREST |
|-------|------------------------|

GSL12049XX (01-2011)                                                                                    Page 2

Copyright © CNA All Rights Reserved.



**Epack** Extra
**GENERAL TERMS AND CONDITIONS**

Assignment of interest under this Policy shall not bind the Insurer unless its consent is endorsed to this Policy.

| IX. | TERRITORY |
|---|---|

Coverage shall apply worldwide.

| X. | ENTIRE AGREEMENT |
|---|---|

The **Insureds** agree that this Policy constitutes the entire contract existing between them and the Insurer or any of its agents relating to this insurance.

| XI. | COORDINATION AMONG COVERAGE PARTS |
|---|---|

Subject always to the applicable Limit of Liability, should two or more **Coverage Parts** apply to the same **Claim**; the Insurer will not pay more than the actual **Loss** incurred by the **Insureds**.

| XII. | COVERAGE FOR NEW SUBSIDIARIES AND PLANS |
|---|---|

A. If, after the effective date of this Policy:

   1. an **Insured Entity** creates or acquires a privately held entity or plan, or

   2. an **Insured Entity** or any **Plan** merges with another privately held entity or plan such that an **Insured Entity** or any **Plan** is the surviving entity or plan,

   then such entity or plan, and any subsidiaries, plans, directors, officers, trustees or employees of such entity or plan who otherwise would thereby become an **Insured**, shall be automatically covered under this Policy, subject to its terms and conditions.

Notwithstanding the above, solely with respect to the coverage provided under the Crime **Coverage Part**, Section **V**, **CONDITIONS**, Paragraph **A. 2** New **Employee Benefit Plans**, of the Crime **Coverage Part** controls whether or not such newly created, acquired, or merged plan is an **Insured** as set forth above.

B. Solely with respect to any liability **Coverage Part**, there shall be no coverage for any **Wrongful Act** by such created, acquired or merged entity or **Plan**, or by any persons or entities considered to be **Insureds** pursuant to paragraph A of this Section, where such **Wrongful Act** occurred in whole or in part before the effective date of such acquisition or merger or for any **Wrongful Act** occurring on or after such date which, together with any **Wrongful Acts** occurring before such date, would be considered **Interrelated Wrongful Acts**.

| XIII. | CHANGE OF STATUS OF INSUREDS |
|---|---|

   A. **Takeover of the Named Insured**

GSL12049XX (01-2011)

Copyright © CNA All Rights Reserved.





**GENERAL TERMS AND CONDITIONS**

In the event of a **Takeover** of the **Named Insured**, coverage under this Policy shall continue until this Policy expires or is otherwise terminated, but only with respect to **Wrongful Acts** or **Crime Loss** that takes place before the effective date of the **Takeover**, unless:

1. the Insurer is notified in writing of the **Takeover** prior to the **Takeover** effective date and agrees in writing to provide coverage for **Wrongful Acts** occurring on or after such effective date, and

2. the **Named Insured** accepts any special terms, conditions, exclusions or additional premium charge required by the Insurer.

B. **Cessation of Subsidiary**

If any **Insured Entity** ceases to be a **Subsidiary**, coverage under this Policy shall continue for such **Subsidiary** but only for **Wrongful Acts** by such **Subsidiary** or any **Insured Person** or **Plan** of such **Subsidiary** occurring prior to the date such **Insured Entity** ceased to be a **Subsidiary**.

C. **Transfer or Termination of a Plan**

If the sponsorship of a **Plan** is transferred so that an **Insured Entity** is no longer the sole employer sponsor of such **Plan** or if a **Plan** is terminated, coverage under this Policy shall continue for any **Wrongful Act** by or with respect to such **Plan** occurring prior to the date of such transfer or termination.

| XIV. | TRADE AND ECONOMIC SANCTIONS |
|------|------------------------------|

This Policy does not provide coverage for **Insureds**, transactions or that part of **Loss** that is uninsurable under the laws or regulations of the United States concerning trade or economic sanctions.

| XV. | VALUATION |
|-----|-----------|

All premiums, limits, retentions, **Loss** and other amounts under this policy are expressed and payable in United States of America currency. If any judgment, settlement or any part of **Loss** is expressed or calculated in any other currency, payment of such **Loss** due under this Policy will be made in the currency of the United States of America, at the rate of exchange published in <u>The Wall Street Journal</u> on the date the Insurer's obligation to pay such **Loss** is established, or, if not published on that date, on the date of next publication.

| XVI. | HEADINGS |
|------|----------|

The descriptions in the headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

| XVII. | BANKRUPTCY |
|-------|------------|

Copyright © CNA All Rights Reserved.





**GENERAL TERMS AND CONDITIONS**

Bankruptcy or insolvency of any **Insured** shall not relieve the Insurer of any of its obligations hereunder.

**THOSE LIABILITY COVERAGE PARTS DESIGNATED AS "CLAIMS MADE" APPLY ONLY TO CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD. CLAIMS MADE UNDER ANY CLAIMS MADE LIABILITY COVERAGE PARTS MUST BE REPORTED IN ACCORDANCE WITH THE SECTION XXII., NOTICE/DATE OF CLAIM/INTERRELATED CLAIM CLAUSE. NO COVERAGE EXISTS FOR CLAIMS FIRST MADE AGAINST THE INSURED AFTER THE END OF THE POLICY PERIOD UNLESS, AND TO THE EXTENT THAT, THE EXTENDED REPORTING PERIOD APPLIES. DEFENSE COSTS REDUCE THE LIMIT OF LIABILITY AND ARE SUBJECT TO THE RETENTION. PLEASE REVIEW THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER. THE FOLLOWING TERMS AND CONDITIONS APPLY ONLY TO LIABILITY COVERAGE PARTS:**

## XVIII. EXTENDED REPORTING PERIOD

Solely with respect to those Liability **Coverage Parts** written on a claims made basis, the following applies:

### A. Optional Extended Reporting Period

If the **Named Insured** cancels or non-renews this Policy or if the Insurer decides not to offer any renewal terms for this Policy, the **Named Insured** shall have the right to purchase, upon payment of an additional premium an extension of this Policy immediately following the end of the **Policy Period**, but only with respect to any **Wrongful Act** committed before the earlier of the end of the **Policy Period** or the effective date of any **Takeover**. The additional premium for such extension is a percentage of the total **Policy Premium** attributable to the **Policy Year** in effect upon such cancellation or non-renewal. For a one year extension, the premium equals seventy-five percent (75%) of such total **Policy Premium**; for a two year extension, the additional premium equals one hundred and twenty-five percent (125%) of such total **Policy Premium**; and for a three year extension, the additional premium equals one hundred and fifty percent (150%) of such total **Policy Premium**.

This period shall be referred to as the Extended Reporting Period.

### B. Payment of Extended Reporting Period Premium

As a condition precedent to the right to purchase the Extended Reporting Period, the total premium for this Policy must have been paid. The right to purchase the Extended Reporting Period ends sixty (60) days after termination or expiration of the **Policy Period** unless the Insurer receives written notice and full payment of the premium for such Extended Reporting Period within sixty (60) days after such termination or expiration

### C. Non-Cancelable/Premium Fully Earned

If the Extended Reporting Period is purchased, the entire premium shall be deemed fully earned at its commencement without any obligation by the Insurer to return any portion thereof.

Copyright © CNA  All Rights Reserved.





**GENERAL TERMS AND CONDITIONS**

D. **No Separate Limit**

There is no separate or additional limit of liability for the Extended Reporting Period. The remainder of the Limit of Liability applicable to the **Policy Year** in effect at the end of the **Policy Period** is the limit of liability for all **Claims** reported during the Extended Reporting Period.

| XIX. | ESTATES, LEGAL REPRESENTATIVES AND SPOUSES |
| --- | --- |

Solely with respect to Liability **Coverage Parts**, the estates, heirs, legal representatives, assigns, spouses and any **Domestic Partners** of the **Insured Persons** shall be considered **Insureds** under this Policy; provided, however, coverage is afforded to such estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** only for **Claims** arising solely out of their status as such and, in the case of a spouse or **Domestic Partner**, where such **Claim** seeks damages from marital community property, jointly held property or property transferred from the **Insured Person** to the spouse or **Domestic Partner**. No coverage is provided for any act, error or omission of an estate, heir, legal representative, assign, spouse or **Domestic Partner**. All terms and conditions of this Policy, including without limitation the retention, applicable to **Loss** incurred by the **Insured Person**, shall also apply to loss incurred by such estates, heirs, legal representatives, assigns, spouses and **Domestic Partners**.

| XX. | LIMITS OF LIABILITY/RETENTIONS |
| --- | --- |

Solely with respect to Liability **Coverage Parts**:

A. **Options**

This Policy is offered with one of the following options as set forth in the respective Management Liability **Coverage Part** Declarations or the Professional Liability **Coverage Part** Declarations:

1. a Single per **Policy Year** Limit of Liability and Scheduled Retentions; or,

2. Scheduled per **Policy Year** Limits of Liability and Scheduled Retentions.

The **Policy Year** Limits of Liability may not be aggregated or transferred, in whole or in part, so as to provide any additional coverage with respect to **Claims** first made or deemed made during any other **Policy Year**. If the applicable Limits of Liability of for any **Policy Year** are exhausted, the Insurer's obligation for that **Policy Year** shall be deemed completely fulfilled and extinguished.

B. **Single Limit of Liability Option**

Where the Single Limit of Liability Option has been selected, as set forth in the respective Management Liability **Coverage Part** Declarations or the Professional Liability **Coverage Part** Declarations, the limits apply as follows:

1. the limit of liability set forth in the Management Liability **Coverage Part** Declarations shall be the maximum per **Policy Year** aggregate limit of liability of the Insurer for all **Loss** under this Policy from all Management Liability **Coverage Parts** shown on the

GSL12049XX (01-2011)

Page 6

Copyright © CNA  All Rights Reserved.





**GENERAL TERMS AND CONDITIONS**

Management Liability **Coverage Part** Declarations, regardless of the number of such **Coverage Parts**.

2. the limit of liability set forth in the Professional Liability **Coverage Part** Declarations shall be the maximum per **Policy Year** aggregate limit of liability of the Insurer for all **Loss**, all **Privacy Event Expenses**, and all **Network Extortion Expenses** under this Policy from all Professional Liability **Coverage Parts** shown on the Professional Liability **Coverage Part** Declarations, regardless of the number of such **Coverage Parts**.

C. **Scheduled Limits of Liability Option**

Where the Scheduled Limits of Liability Option as set forth in the respective Management Liability **Coverage Part** Declarations or the Professional Liability **Coverage Part** Declarations, the Scheduled Limits of Liability for each **Coverage Part** shall apply as separate Limits of Liability for each such **Coverage Part** and shall be the maximum per **Policy Year** aggregate limit of liability of the Insurer for all **Loss**, all **Privacy Event Expenses** and all **Network Extortion Expenses** under the respective **Coverage Part** for each **Policy Year**.

D. **Each Claim Limits of Liability**

Subject to the applicable Limit of Liability provided in Paragraph B. or C., above, the amounts set forth in the Professional Liability **Coverage Part** Declarations as the each **Claim** Limit of Liability shall be the per **Policy Year** limit of liability of the Insurer for all **Loss** for each such **Claim**.

E. **Privacy Event Expenses/Network Extortion Expenses Sub-Limit of Liability**

Subject to the applicable Limits of Liability provided in Paragraph B., C. or D., above:

1. the amount set forth in the Professional Liability **Coverage Part** Declarations, if any, as the **Privacy Regulation Proceedings** in the Aggregate Limit shall be the per **Policy Year** limit of liability of the Insurer for all **Loss** for all **Privacy Regulation Proceedings**;;

2. the amounts set forth in the Professional Liability **Coverage Part** Declarations, if any, as the **Privacy Event Expenses** in the Aggregate Limit  and as the  **Network Extortion Expenses** in the Aggregate Limit are the per **Policy Year** limits of liability of the Insurer for all such **Privacy Event Expenses** and all such **Network Extortion Expenses**.

Such amounts as set forth in paragraphs E. 1 and 2 above are sublimits of liability which further reduce, and in no way increase, the applicable each **Claim** and Aggregate Limits of Insurance as set forth on the Professional Liability **Coverage Part** Declarations.

F. **Additional Limit of Liability for Non-Indemnifiable Loss**

Solely with respect to Section I, INSURING AGREEMENT A. of the Directors & Officers Liability **Coverage Part**, there is an additional Limit of Liability which shall not exceed $1,000,000 (the "non-indemnifiable **Loss** limit") per **Policy Year**.  This non-indemnifiable **Loss** limit is available only after the applicable Limits of Liability as set forth in the Management Liability **Coverage Part** Declarations has been exhausted.

Copyright © CNA  All Rights Reserved.





**GENERAL TERMS AND CONDITIONS**

G. **Retentions**

1. Retentions set forth in the respective Management Liability **Coverage Part** Declarations or the Professional Liability **Coverage Part** Declarations shall apply under each **Coverage Part** as set forth in such Declarations. The Insurer shall pay **Loss** in excess of any retention as it becomes due and payable to the **Insureds**.

2. Subject to paragraph 3. below, the Insurer's obligation to pay **Loss** is in excess of any applicable retentions. The Insurer will have no obligation to pay all or any portion of any applicable retention. Should the Insurer, in its sole discretion, pay any retention, then the **Named Insured** shall have the obligation to reimburse the Insurer for such amounts.

3. Solely with respect to the Directors & Officers Liability **Coverage Part** and the Fiduciary Liability **Coverage Part**, no retention applies to any **Insured Person** with respect to any **Claim** against such **Insured Persons** if:

   a. the **Insured Entity** and/or any **Plan** are not permitted to advance **Defense Costs** or to indemnify such **Insured Person** for **Loss** by reason of:

      i. **Financial Insolvency**; or

      ii. a good faith determination by the **Insured Entity** and/or any **Plan** that such payment is not permitted under the broadest construction of applicable law; or,

   b. there is a determination of **No Liability** of such **Insured Person** with respect to such **Claim**, or if such **Claim** is dismissed, or, there is a stipulation to dismiss such **Claim**, with prejudice and without the payment of any consideration.

4. Subject to Section **XI. Coordination Among Coverage Parts**, if a **Single Loss** is covered under more than one **Coverage Part** and if more than one retention applies to such **Single Loss**, the maximum total retention amount applicable to such **Single Loss** shall be the highest of such applicable retentions.

H. **Supplementary Payment - Defendant Reimbursement**

If the Insurer requests an **Insured Person's** presence at a trial, hearing, deposition, mediation or arbitration, the Insurer will pay up to $250.00 a day per person for reimbursement of costs and expenses incurred in connection with such presence, subject to a maximum amount of $2,500 per **Claim** per **Policy Year**. Such payments are in addition to the limits of liability and do not erode any retention.

I. **Multiple Insureds, Claims and Claimants**

The applicable limit of liability shown in the respective Management Liability **Coverage Part** Declarations or the Professional Liability **Coverage Part** Declarations, and subject to the provisions of this Policy, is the amount the Insurer will pay for **Loss, Privacy Event Expenses** (as applicable) or **Network Extortion Expenses** (as applicable) per **Policy Year** regardless of the number of **Insureds, Claims** (including **Privacy Regulation Proceedings), Privacy Events, Network Extortions**, or persons or entities making **Claims**.

---

**XXI.   DEFENSE/SETTLEMENT/MEDIATION/PRE-CLAIM ASSISTANCE**

---

Copyright © CNA All Rights Reserved.





**GENERAL TERMS AND CONDITIONS**

Solely with respect to Liability **Coverage Parts**, and solely with respect to those **Claims** that are not **Privacy Regulation Proceedings**:

A. **Defense of Claims**

The Insurer has the right and duty to defend all **Claims** even if the allegations are groundless, false or fraudulent. The Insurer shall have the right to appoint counsel and to make such investigation and defense of a **Claim** as it deems necessary. Alternatively the Insurer may at its option, give its written consent to the defense of any such **Claim** by the **Insureds**. The Insurer's obligation to defend any **Claim** or pay any **Loss**, including **Defense Costs**, shall be completely fulfilled and extinguished if the applicable limit of liability has been exhausted by payment of **Loss**.

B. **Settlement**

1. Consent

   The Insurer shall not settle a **Claim** without the written consent of the **Named Insured**. If the **Named Insured** refuses to consent to a settlement or compromise recommended by the Insurer, and acceptable to the claimant, then the limit of liability applicable to such **Claim** for all **Loss** including **Defense Costs** under this Policy shall be reduced to:

   a. the amount of the proposed settlement plus **Defense Costs** incurred up to the date of the **Named Insured's** refusal to consent to proposed settlement of such **Claim**;

   plus, solely with respect to the Directors & Officers Liability **Coverage Part**, the Employment Practices Liability **Coverage Part**; and the Fiduciary Liability **Coverage Part**:

   b. eighty percent (80%) of any **Loss**, including **Defense Costs**, in excess of the amount referenced in paragraph a. above, incurred in connection with such **Claim**. The remaining twenty percent (20%) of any **Loss**, including **Defense Costs**, in excess of the amount referenced in paragraph a. above will be borne uninsured and at the **Insured's** own risk;

   which amount shall not exceed the remainder of the applicable limit of liability specified in the Management Liability **Coverage Part** Declarations or the Professional Liability **Coverage Part** Declarations.

2. Mediation

   If, prior to institution of arbitration proceedings or service of suit or within sixty (60) days of the institution of such proceedings or service of suit, the Insurer and the **Named Insured** agree to use a process of non binding intervention by a neutral third party to resolve any **Claim** reported to the Insurer, and if such **Claim** is resolved through such process, the Insurer will reduce the retention applicable to such **Claim** by fifty percent or ten thousand dollars ($10,000.00), whichever is less.

3. Admission

GSL12049XX (01-2011)

Copyright © CNA All Rights Reserved.





**GENERAL TERMS AND CONDITIONS**

The **Insureds** shall not admit liability, consent to any judgment, agree to any settlement or make any settlement offer without the Insurer's prior written consent, such consent not to be unreasonably withheld. The Insurer shall not be liable for any **Loss** to which it has not consented. The **Insureds** agree that they shall not knowingly take any action which increases the Insurer's exposure for **Loss** under this Policy.

4.  Payment of **Loss** in Excess of Retentions

    The Insurer is liable to pay only that amount of a covered **Single Loss** in excess of the applicable retention, if any, up to the applicable limit of liability. The retention shall be uninsured.

5.  Cooperation/Assistance of **Insureds**

    The **Insureds** shall furnish the Insurer with copies of reports, investigations, pleadings, and all related papers, and such other information, assistance and cooperation as the Insurer may reasonably request.

C. **Pre-Claim Assistance**

Until the date a **Claim** is made, the Insurer may pay for all costs or expenses it incurs, at its sole discretion, as a result of investigating a circumstance that an **Insured** reports in accordance with Section XXII. NOTICE/DATE OF CLAIM/INTERRELATED CLAIM CLAUSE. Should a circumstance be investigated pursuant to this Section, and that circumstance later becomes a covered **Claim** under this Policy, then the limits of liability and the retention applicable to such **Claim** shall apply to such **Claim**.

D. **Defense of Privacy Regulation Proceedings**

Solely with respect to those **Claims** that are **Privacy Regulation Proceedings**, the **Insureds** and not the Insurer have the duty to defend any **Privacy Regulation Proceedings**. The Insurer shall be entitled to effectively associate in the defense and the negotiation of any settlement of any **Privacy Regulation Proceeding** that involves or appears reasonably likely to involve the Insurer.

E. **Allocation**

If, in any **Claim** under a liability **Coverage Part**, the **Insureds** who are afforded coverage for such **Claim** incur an amount consisting of both **Loss** that is covered by this Policy and also loss that is not covered by this Policy because such **Claim** includes both covered and uncovered matters or covered and uncovered parties, then coverage shall apply as follows:

1.  **Defense Costs**: one hundred percent (100%) of reasonable and necessary **Defense Costs** incurred by such **Insured** from such **Claim** will be considered covered **Loss**; and

2.  loss other than **Defense Costs**: all remaining loss incurred by such **Insured** from such **Claim** will be allocated between covered **Loss** and uncovered loss based upon the relative legal exposures of the parties to such matters.

---

## XXII.   NOTICE/DATE OF CLAIM/INTERRELATED CLAIM CLAUSE

Copyright © CNA All Rights Reserved.





GENERAL TERMS AND CONDITIONS

Paragraphs A. and B. apply only to those Liability **Coverage Parts** written on a claims made basis.

A. **Notice of Claim or Privacy Event**

The **Insureds** shall, as a condition precedent to the obligations of the Insurer under this Policy, give prior written notice to the Insurer of a **Claim** or a **Privacy Event** as soon as practicable after the **Named Insured's** Chief Executive Officer, Chairperson, Chief Financial Officer, President, Risk Manager, In-House General Counsel or Plan Fiduciary (or any equivalent position) learns of such **Claim** or **Privacy Event** but in no event later than ninety (90) days after termination or expiration of the **Policy Period** or any subsequent renewal **Policy Period** in an uninterrupted series of renewals, or prior to the expiration of the Extended Reporting Period, if applicable.

B. **Notice of Circumstance**

If, during the **Policy Period** or the Extended Reporting Period, if applicable, the **Insureds** first become aware of a **Wrongful Act** that occurred during the **Policy Period** which may reasonably give rise to a future **Claim** (a "circumstance") and during such period give written notice to the Insurer of:

1. the names of any potential claimants and a description of the **Wrongful Act** which forms the basis of their potential **Claim**;

2. the identity of the specific **Insureds** allegedly responsible for such specific **Wrongful Act**;

3. the consequences which have resulted or may result from such specific **Wrongful Act**;

4. the nature of the potential monetary damages or non-monetary relief which may be sought in consequence of such specific **Wrongful Act**; and,

5. the circumstances by which **Insureds** first became aware of such specific **Wrongful Act**;

then any **Claim** otherwise covered pursuant to a **Coverage Part** which is subsequently made and which arises out of such circumstance shall be deemed to have been first made and reported to the Insurer by the **Insureds** at the time such written notice was received by the Insurer. No coverage is provided for fees and expenses incurred prior to the time such notice results in a **Claim**.

C. **Notice of Occurrence for the Media Liability Coverage Part (Occurrence)**

Solely with respect to the Media Liability **Coverage Part (Occurrence)**, the **Insureds**, as a condition precedent to the obligations of the Insurer under Media Liability **Coverage Part**, shall give written notice to the Insurer as set forth in such Occurrence form.

D. **Interrelated Claims**

1. More than one **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be considered as one **Claim** which shall be deemed made on the earlier of:

   a. the date on which the earliest such **Claim** was first made, or

GSL12049XX (01-2011)

Copyright © CNA All Rights Reserved.





**GENERAL TERMS AND CONDITIONS**

    b. the first date valid notice was given by the **Insureds** to the Insurer under this Policy of any **Wrongful Act** or under any prior policy of any **Wrongful Act** or any fact, circumstance, situation, event or transaction which underlies any such **Claim**.

2. More than one **Privacy Event** involving the same **Wrongful Act** or **Related Wrongful Acts** shall be considered as one **Privacy Event** which shall be subject to the **Privacy Event** limit applicable to the earliest such **Privacy Event** reported to the Insurer under this Policy or under any prior policy.

E. **To Whom Notice of Claim or Circumstance is Sent**

The Insureds shall give written notice of Claims or circumstances to the Insurer under this Policy as specified in the Policy Declarations, which notice shall be effective upon receipt.

## XXIII.  OTHER INSURANCE

Solely with respect to Liability **Coverage Parts**:

A. If any **Loss** resulting from any **Claim** is insured under any other valid and collectible insurance, this Policy shall apply only as excess over such other insurance unless such other insurance is written only as specific excess insurance over the limit of liability provided by this Policy.

B. Any coverage under this Policy for **Claims** against any **Insured Person** while acting as an **Outside Entity Executive** shall be specifically excess of any valid and collectible insurance and/or indemnification available to such **Outside Entity Executive** from the **Outside Entity**. Payment by the Insurer or any affiliate of the Insurer under another policy as a result of a **Claim** against an **Insured Person** while acting as an **Outside Entity Executive** shall reduce, by the amount of such payment, the Insurer's Limit of Liability under this Policy with respect to such **Claim**.

## XXIV.  SUBROGATION AND RECOVERY

Solely with respect to Liability **Coverage Parts**:

A. To the extent it pays any **Loss**, the Insurer shall be subrogated to all the **Insureds'** rights of recovery therefore, including without limitation an **Insured Person's** right to indemnification or advancement from an **Insured Entity**. The **Insureds** shall execute all papers necessary to secure such rights, including executing any documents necessary to enable the Insurer effectively to bring suit in their name, and shall take no action which impairs the Insurer's rights of subrogation or recovery.

B. If a **Single Loss** is in part insured and in part uninsured under this Policy or is in an amount in excess of the applicable limit of liability, the **Insureds** and the Insurer shall attempt to agree upon an equitable allocation of any recoveries made, whether before or after payment of the **Loss** by the Insurer, from any person or source responsible for causing the **Loss**. Reasonable expenses incurred in making a recovery shall always have priority of payment from all such recoveries. If, after exerting their best efforts, the **Insureds** and the Insurer are unable to agree upon such an allocation after taking into account due consideration for the respective parties' willingness to pay the expenses of making any recovery, the Insurer, if

Copyright © CNA  All Rights Reserved.





**GENERAL TERMS AND CONDITIONS**

requested by the **Insureds**, shall submit the dispute to binding arbitration. The rules of the American Arbitration Association shall apply with respect to the selection of the arbitration panel, which shall consist of one arbitrator selected by the **Insureds**, one arbitrator selected by the Insurer, and a third independent arbitrator selected by the first two arbitrators.

C. In no event shall the **Insureds** be entitled to recoup from recoveries any amount to satisfy any retention until after all amounts which the Insurer is required to pay or pays under any applicable **Coverage Part** are reimbursed to the Insurer.

D. No person or **Insured Entity** shall have any right under this Policy to join the Insurer as a party to any **Claim** against the **Insureds** to determine the **Insureds'** liability, nor shall the Insurer be impleaded by the **Insureds** or their legal representatives in any such **Claim**.

E. Solely with respect to coverage under the Fiduciary Liability **Coverage Part**, the Insurer shall have the right to full recourse against **Insured Persons** who actually commit **a Wrongful Act**, provided however, that if the **Insured Persons** or the **Insured Entity** shall have paid the premium set forth in the Policy Declarations and no part of such premium has been paid, directly or indirectly, from any assets of the **Plan**, then the Insurer shall have no such rights of recourse.


IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed by its Chairman and Secretary at Chicago, Illinois, but the same shall not be binding upon the Insurer unless countersigned by a duly authorized representative of the Insurer.


Chairman                                         Secretary

GSL12049XX (01-2011)

Copyright © CNA All Rights Reserved.

Page 13





**GLOSSARY OF DEFINED TERMS**
**NOT-FOR-PROFIT**

For purposes of this Policy, words in bold, whether expressed in the singular or the plural, have the meaning set forth below.

---

**ADMINISTRATOR**

**Administrator** means an **Insured** who renders **Administration Services** in connection with the **Plan**.

---

**ADMINISTRATION SERVICES**

**Administration Services** means any of the following services in connection with the **Plan**:

1. communicating with or providing information to **Employees** or **Plan** participants or beneficiaries regarding any **Plan**;

2. determining vesting and eligibility for **Plan** participation or benefits;

3. calculating benefits provided under the **Plan**;

4. processing applications and related forms required for the payment of benefits;

5. performing any record-keeping and data processing functions required by **ERISA or any Similar Act** or the **Plan**;

6. preparing and filing any necessary reports or returns required under **ERISA or any Similar Act** or the Internal Revenue Code, and the regulations thereunder;

7. effecting the payment of benefits or authorized administrative expenses; or,

8. enrolling, terminating or canceling **Employees** or **Plan** participants or beneficiaries.

---

**APPLICATION**

**Application** means all signed applications for this Policy and for any policy in an uninterrupted series of policies issued by the Insurer or any affiliate of the Insurer of which this Policy is a renewal or replacement. **Application** includes any materials submitted or required to be submitted therewith. An "affiliate of the Insurer" means an Insurer controlling, controlled by, or under common control with, the Insurer.

---

**CLAIM**

**Claim** means:

1. a written demand for monetary damages or non-monetary relief (including demands for injunctive or declaratory relief) against an **Insured** alleging a **Wrongful Act**, which **Claim** shall be deemed made on the date of the **Insureds'** receipt of such written demand; or

2. a written request received by the **Insured** to toll or waive a statute of limitations in connection with a **Claim** as defined in paragraph I. through III. below, which **Claim** shall be deemed made on the date of the **Insureds'** receipt of such written request; or

GSL13699XX (Ed. 03-10)
Page 1

Copyright © CNA  All Rights Reserved.





**GLOSSARY OF DEFINED TERMS**
**NOT-FOR-PROFIT**

When used in the:

I.  Directors & Officers Liability **Coverage Part**, **Claim** also means:

    A.  solely with respect to the Insuring Agreements A., B. and C., a proceeding which is

        i.  a civil or criminal proceeding in a court of law or equity or any alternative dispute resolution proceeding; or,

        ii.  a formal civil or criminal administrative or regulatory proceeding;

      against an **Insured** alleging a **Wrongful Act**, including any appeal therefrom. Such **Claim** shall be deemed made on the earliest of the date of service upon, or other receipt by, any **Insured** of a complaint, subpoena, indictment, notice of charge or similar document in such proceeding or arbitration;

    B.  solely with respect to Insuring Agreements A. and B., a formal civil, criminal, administrative or regulatory investigation of an **Insured Person** alleging a **Wrongful Act**, which **Claim** shall be deemed made upon such **Insured Person** being identified by name in a formal order of investigation, Wells Notice, target letter (within the meaning of Title 9, §11.151 of the United States Attorney's Manual), or similar document, as someone against whom a formal civil, criminal, administrative or regulatory investigation may be brought; or,

II.  Employment Practices Liability **Coverage Part**, **Claim** also means:

    A.  a civil proceeding in a court of law or equity or any alternative dispute resolution proceeding; or,

    B.  a formal civil administrative or regulatory proceeding or formal civil, administrative or regulatory investigation (including an **EEOC Proceeding**);

    against an **Insured**, alleging a **Wrongful Employment Practice,** including any appeal therefrom.  Such **Claim** shall be deemed made on the earliest of the date of service upon, or other receipt by, any **Insured** of a complaint, subpoena, formal order of investigation, target letter (within the meaning of Title 9, §11.151 of the United States Attorney's Manual), or similar document in such proceeding, arbitration or investigation.

    However, **Claim** does not include any criminal proceeding, criminal administrative or criminal regulatory proceeding or criminal investigation.  Nor does **Claim** include an audit conducted by the Office of Federal Contract Compliance Programs unless a Notice of Violation, Order to Show Cause or written demand for monetary relief or injunctive relief has been issued;

III.  Fiduciary Liability Coverage Part, **Claim** also means a proceeding which is a:

    A.  civil or criminal proceeding in a court of law or equity or any alternative dispute resolution proceeding; or

    B.  a formal civil or criminal administrative or regulatory proceeding or formal civil, administrative or regulatory investigation;

GSL13699XX (Ed. 03-10)
Page 2

Copyright © CNA  All Rights Reserved.





GLOSSARY OF DEFINED TERMS
NOT-FOR-PROFIT

against an **Insured** alleging a **Wrongful Act**, including any appeal therefrom. Such **Claim** shall be deemed made on the earliest of service upon, or other receipt by, any **Insured** of a complaint, subpoena, indictment, notice of charge, formal order of investigation, target letter (within the meaning of Title 9, §11.151 of the United States Attorney's Manual), or similar document in such proceeding, arbitration or investigation.

## COMPLIANCE COSTS

**Compliance Costs** means:

1. **Consulting Fees** incurred in connection with, or

2. any fines, penalties or sanctions paid by an **Insured** to a governmental authority pursuant to,

a **Voluntary Compliance Program** for the actual or alleged inadvertent non-compliance by a **Plan** with any statute, rule or regulation; provided **Compliance Costs** shall not include: (i) any costs to correct the non-compliance, or (ii) any **Consulting Fees**, fines, penalties or sanctions relating to a **Plan** which, as of the earlier of inception of this **Policy** or inception of the first policy in an uninterrupted series of policies issued by the **Insurer** of which this **Policy** is a direct or indirect renewal or replacement, any **Insured Person** knew  to be actually or allegedly non-compliant.

## CONSULTING FEES

**Consulting Fees** means reasonable and necessary fees, costs and expenses incurred by the **Insureds** with the prior written consent of the Insurer, including the fees charged by a third party actuary, benefits consultant, accountant or legal counsel, resulting solely from the correction of an actual or alleged inadvertent non-compliance by a **Plan** with any statute, rule or regulation. However, **Consulting Fees** shall not include fees, costs or expenses relating to a **Plan** audit or relating to finding, assessing or identifying such violation.

## COVERAGE PART

**Coverage Part** means only those coverage parts designated as included in the Declarations.

## DEFENSE COSTS

**Defense Costs** with respect to all Liability **Coverage Parts** means:

1. all fees charged by attorneys designated by the Insurer, and all reasonable fees charged by attorneys designated by the **Named Insured** with the Insurer's prior written consent;

2. all other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a **Claim** incurred by the Insurer or by the **Insureds** with the prior written consent of the Insurer; and,

GSL13699XX (Ed. 03-10)
Page 3

Copyright © CNA  All Rights Reserved.





**GLOSSARY OF DEFINED TERMS**
**NOT-FOR-PROFIT**

3.  the costs of appeal, attachment or similar bonds. The Insurer has no obligation to provide such bonds.

**Defense Costs** do not include any fees, costs or expenses incurred by an **Insured** to the extent the **Defense Costs** are without the Insurer's prior written consent.

All fees, costs and expenses incurred in the investigation, adjustment, defense and appeal of a **Claim** must be reasonable and necessary to the defense of the **Claim**.

However, **Defense Costs** does not include salaries, wages, fees, overhead or benefit expenses associated with the directors, officers, **Employees** of the **Insured Entity**.

## DOMESTIC PARTNER

**Domestic Partner** means any person qualifying as a "domestic partner" under any federal, state or local laws or under the **Insured Entity's** employee benefit plans.

## EEOC PROCEEDING

**EEOC Proceeding** means an investigative proceeding before the Equal Employment Opportunity Commission or an adjudicatory or investigative proceeding before any similar federal, state or local government body whose purpose is to address **Wrongful Employment Practices**.

## EMPLOYEE

**Employee** means all past, present or future full-time or part-time employees of the **Insured Entity**, including seasonal and temporary employees and employees leased or loaned to the **Insured Entity** and including any volunteers or committee members of the **Insured Entity**. **Employee** does not include any independent contractor.

However, when used in the Crime **Coverage Part, Employee** has the meaning set forth therein.

## EMPLOYMENT RELATED BENEFITS

**Employment Related Benefits** means perquisites, fringe benefits, deferred compensation or payments (including insurance premiums) in connection with an employee benefit plan, **Stock Benefits** and any other payment to or for the benefit of an **Employee** arising out of the employment relationship. **Employment Related Benefits** shall not include salary, wages, commissions, or non-deferred cash incentive compensation.

## ERISA OR ANY SIMILAR ACT

**ERISA or any Similar Act** means the Employee Retirement Income Security Act of 1974, as amended, or any similar common or statutory law of the United States, Canada or their states, territories or provinces or any other jurisdiction anywhere in the world.

## EXECUTIVE

**Executive** means any past, present or future director, office, trustee, governor or **Manager** of the **Insured Entity** or any **Plan**.

GSL13699XX (Ed. 03-10)
Page 4

Copyright © CNA  All Rights Reserved.





**GLOSSARY OF DEFINED TERMS**
**NOT-FOR-PROFIT**

When used in the Employment Practices Liability **Coverage Part**, **Executive** also includes any past, present or future director of human resources or functional equivalent position of any **Insured Entity**.

---
**FIDUCIARY**
---

**Fiduciary** means any **Insured Person** who is described as a fiduciary with respect to the **Plan** in Section 3(21)(A) of Employee Retirement Income Security Act of 1974, as amended.

---
**FINANCIAL INSOLVENCY**
---

**Financial Insolvency** means:

1.  the appointment of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate such **Insured Entity** or **Plan**; or such **Insured Entity** or **Plan** becoming a debtor in possession; or

2.  the inability of such **Insured Entity** or **Plan** financially or under applicable law to advance **Defense Costs** or indemnify the **Insured Persons** for **Loss**.

---
**FOREIGN JURISDICTION**
---

**Foreign Jurisdiction** means any jurisdiction, other than the United States or any of its territories or possessions.

---
**INSURED**
---

**Insured** means the **Insured Person** and the **Insured Entity**.

When used in the Fiduciary Liability **Coverage Part**, **Insured** also means any **Plan**.

---
**INSURED ENTITY**
---

**Insured Entity** means the **Named Insured** and any **Subsidiary** including any such entity as a debtor in possession under United States bankruptcy law or an equivalent status under the law of any other country.

When used in connection with the Crime **Coverage Part**, **Insured** has the meaning set forth therein.

---
**INSURED PERSON**
---

**Insured Person** means **Executives** and **Employees** of the **Insured Entity**.

When used in the:

I.   Directors & Officers Liability **Coverage Part**, **Insured Person** also includes any **Outside Entity Executive**;

II.  Fiduciary Liability **Coverage Part**, **Insured Person** also includes **Executives** or **Employees** of any **Plan**;

---
**INTERRELATED WRONGFUL ACTS**
---

Copyright © CNA All Rights Reserved.





**GLOSSARY OF DEFINED TERMS**
**NOT-FOR-PROFIT**

**Interrelated Wrongful Acts** means **Wrongful Acts** which are logically or causally connected by reason of any common fact, circumstance, situation, transaction or event.

## LOSS

**Loss** means:

1. damages, settlements, judgments (including any award of pre-judgment and post-judgment interest on a covered judgment) and **Defense Costs** for which the **Insured** is legally obligated to pay on account of a covered **Claim**; and

2. punitive and exemplary damages and the multiplied portion of multiplied awards (subject to this Policy's other terms, conditions and limitations). Enforceability of this paragraph shall be governed by such applicable law that most favors coverage for such punitive, exemplary and multiplied amounts. As used herein, "applicable law" means the law of any of the following jurisdictions:

    a. where the **Claim** seeking such **Loss** is brought or where such **Loss** is awarded or imposed; or

    b. where the **Wrongful Act** giving rise to the **Claim** occurred; or

    c. where the **Insureds** subject to such **Loss** are incorporated, have their principal place of business or reside; or

    d. where the Insurer is incorporated or has its principal place of business.

Solely with respect to the Employment Practices Liability **Coverage Part**, **Loss** also includes back pay and front pay, and liquidated damages awarded pursuant to the Age Discrimination in Employment Act or the Equal Pay Act.

However, with respect to all **Coverage Parts**, **Loss** does not include:

1. any amount for which an **Insured Person** is absolved from payment by reason of any covenant, agreement or court order;

2. any matters which are uninsurable (other than punitive, exemplary and the multiplied portion of multiplied awards as set forth above) under the law pursuant to which this Policy shall be construed.

In addition to the above, and solely with respect to the:

I. Directors & Officers Liability **Coverage Part** – Not-for-Profit Entities, **Loss** does not include:

    1. civil or criminal fines, penalties, taxes, sanctions or forfeitures imposed on an **Insured** whether pursuant to law, statute, regulation or court rule, other than:

        a. those civil fines or penalties imposed under 42 USC 1320d-5(a) of the Health Insurance Portability and Accountability Act of 1996, provided however that the maximum limit of the Insurer's liability for all such fines and penalties shall be $100,000 per **Claim**. This sublimit of Liability is part of and not in addition to the applicable Limits of Liability;

        b. those taxes imposed by the Internal Revenue Service, pursuant to Section 4958(a)(2) of the Internal Revenue Code, 26 U.S.C. 4958(a)(2), on an **Insured Person** as a result of such **Insured Person's** participation in an any excise benefit transaction as defined in Section 4958(c) of the Internal Revenue Code, provided however that:

GSL13699XX (Ed. 03-10)
Page 6

Copyright © CNA  All Rights Reserved.



**Epack** Extra
**GLOSSARY OF DEFINED TERMS**
**NOT-FOR-PROFIT**

      i.    indemnification by the **Insured Entity** for such taxes is not expressly prohibited in the bylaws, certificate of incorporation or other organizational documents of the **Insured Entity;**

      ii.   the maximum limit of the Insurer's liability for all such taxes shall be $100,000 per **Claim**.   This sublimit of liability is part of and not in addition to the applicable Limits of Liability.

  2.  any amount (other than **Defense Costs**) attributable to the cost of any non-monetary relief, including without limitation any costs associated with compliance with any injunctive relief of any kind or nature;

  3.  any amounts for which an **Insured** is liable due to an act or omission in knowing violation of any oral or written contract or agreement or due to its assumption of the liability of others under any contract or agreement; or

  4.  compensation earned by the claimant in the course of employment but unpaid by the **Insured**, including salary, wages, commissions, severance, bonus, benefits or incentive compensation.

II.  Employment Practices Liability **Coverage Part, Loss** does not include:

  1.  civil or criminal fines, penalties, taxes, sanctions or forfeitures imposed on an **Insured** whether pursuant to law, statute, regulation or court rule;

  2.  compensation earned by the claimant in the course of employment but unpaid by the **Insured**, including salary, wages, commissions, severance, bonus or incentive compensation; or

  3.  any amounts for which an **Insured** is liable due to an act or omission in knowing violation of any written contract of employment;

  4.  amounts, other than **Defense Costs**, representing medical or insurance premiums or benefit claim payments;

  5.  future salary, wages or commissions of a claimant who is hired, promoted or reinstated to employment pursuant to a settlement of, order in, or other resolution of any **Claim**; or

  6.  **Employment Related Benefits**.

III.  Fiduciary Liability **Coverage Part, Loss** does not include civil or criminal fines, penalties, taxes, sanctions or forfeitures, imposed on an **Insured** whether pursuant to law, statute, regulation or court rule other than:

  1.  **Compliance Costs;**

  2.  the five percent or less or the twenty percent or less penalty imposed upon an **Insured** as a **Fiduciary** under Section 502(i) or 502(l) of ERISA; or,

  3.  those civil fines or penalties imposed under 42 USC 1320d-5(a) of the Health Insurance Portability and Accountability Act of 1996, provided however that the maximum limit of the Insurer's liability for all such fines and penalties shall be $100,000 per **Claim**. This sublimit of Liability is part of and not in addition to the applicable Limits of Liability.

## MANAGEMENT CONTROL

### Management Control means:

1.  owning interests representing more than 50% of the voting, appointment or designation power for the selection of a majority of the Board of Directors of a

Copyright © CNA All Rights Reserved.





**GLOSSARY OF DEFINED TERMS**
**NOT-FOR-PROFIT**

corporation; the management committee members of a joint venture; or the members of the management board of a limited liability company; or

2. having the right, pursuant to written contract or the by-laws, charter, operating agreement or similar documents of the **Insured Entity,** to elect, appoint or designate a majority of the Board of Directors of a corporation; the management committee of a joint venture; or the management board of a limited liability company.

## MANAGER

**Manager** means any natural person manager, member of the management board or equivalent executive of an **Insured Entity** that is a limited liability company.

## NAMED INSURED

**Named Insured** means the person or entity named in Item 1 of the Policy Declarations.

## NO LIABILITY

**No Liability** means a final judgment of no liability obtained in favor of an **Insured Person** after the exhaustion of all appeals.

## NON-INDEMNIFIABLE LOSS

**Non-Indemnifiable Loss** means **Loss** which the **Insured Entity** fails or refuses to indemnify an **Insured Person**:

1. because of **Financial Insolvency**; or,

2. because it is not permitted to indemnify pursuant to law or contract or the charter, bylaws, operating agreement or similar documents of the **Insured Entity** or **Plan**.

## NOT-FOR-PROFIT OUTSIDE ENTITY

**Not-For-Profit Outside Entity** means any organization exempt from federal income taxation pursuant to 26 U.S.C. §501(c)(3), (4), (6), (7), and (10), as amended.

## OCCURRENCE

**Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

## OUTSIDE ENTITY

**Outside Entity** means any **Not-For-Profit Outside Entity**.

## OUTSIDE ENTITY EXECUTIVE

Copyright © CNA  All Rights Reserved.





**GLOSSARY OF DEFINED TERMS**
**NOT-FOR-PROFIT**

**Outside Entity Executive** means an **Executive** of the **Insured Entity** who is or was acting as a member of the board of directors, board of trustees, board of managers, or functional equivalent thereof, in any **Not-For-Profit Outside Entity**, provided and so long as such service is at the specific request, consent or direction of the **Insured Entity**.

---

**PENSION PLAN**

**Pension Plan** means any employee pension benefit plan, as defined in 29 U.S.C. §1002, subject to regulation under **ERISA or any Similar Act**. However, **Pension Plan** shall not include an excess benefit plan as defined in 29 U.S.C. §1002 or an employee stock ownership plan as defined in 26 U.S.C. §4975.

---

**PERSONAL/PROPRIETARY INJURY**

**Personal/Proprietary Injury** means injury arising out of one or more of the following:

1. false arrest, detention or imprisonment, or malicious prosecution;

2. wrongful entry or eviction, or other invasion of the right of private occupancy;

3. libel, slander, or other forms of defamation;

4. plagiarism, misappropriation of ideas (including advertising ideas), or breach of confidentiality;

5. invasion, infringement or interference with the rights of privacy or publicity; or

6. infringement of copyright, title, slogan, logo, trademark, trade name, trade dress, service mark, or service name.

---

**PLAN**

**Plan** means:

1. any **Welfare Plan** or **Pension Plan** which was, on or prior to the effective date of this Policy, sponsored solely by the **Insured Entity**, or sponsored jointly by the **Insured Entity** and a labor organization, solely for the benefit of the **Employees** of the **Insured Entity**;

2. any **Welfare Plan** or **Pension Plan** which, after the effective date of this Policy, becomes sponsored solely by the **Insured Entity**, or jointly by the **Insured Entity** and a labor organization, solely for the benefit of the **Employees** of the **Insured Entity**, if and to the extent coverage with respect to such **Plan** is afforded pursuant to paragraph A of Section XII. **COVERAGE FOR NEW SUBSIDIARIES AND PLANS** of the General Terms and Conditions of this Policy;

3. any other plan or program otherwise described in paragraphs 1. and 2. above while such plan or program is being actively developed, formed or proposed by the **Insured Entity** prior to the formal creation of such plan or program; or,

4. any government-mandated insurance for workers' compensation, unemployment, social security or disability benefits for **Employees** of the **Insured Entity**.

**Plan** does not include any multi-employer plan as defined in **ERISA or any Similar Act.**

---

**POLICY PERIOD**

Copyright © CNA  All Rights Reserved.



**Epack** Extra
**GLOSSARY OF DEFINED TERMS**
**NOT-FOR-PROFIT**

**Policy Period** means the period of time from the effective date and time of this Policy to the date and time of termination as shown in the Policy Declarations, or its earlier cancellation date. If the length of the **Policy Period** is the same as the **Policy Year**, the terms **Policy Period** and **Policy Year** are used interchangeably herein.

---

**POLICY PREMIUM**

**Policy Premium** means the original premium and the fully annualized amount of any additional premiums, other than the Extended Reporting Period premium, charged by the Insurer before or during the **Policy Period**.

---

**POLICY YEAR**

**Policy Year** means the period of one year following the effective date of the **Policy Period** or any subsequent one-year anniversary thereof. As permitted by individual state law, a **Policy Year** may be extended or reduced by endorsement or by termination of the Policy.

---

**POLLUTANTS**

**Pollutants** means any substance exhibiting hazardous characteristics as is or may be defined or identified on any list of hazardous substances issued by the United States Environmental Protection Agency or any state, local or foreign counterpart. **Pollutants** includes, without limitation, any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste (including materials to be recycled, reconditioned or reclaimed), as well as any air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos, or asbestos products or any noise.

---

**PROPERTY DAMAGE**

**Property Damage** means:

1. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or,

2. loss of use of tangible property that is not physically damaged except that with respect to the Technology & Telecommunications Liability **Coverage Part** such loss of use must be caused by an **Occurrence**.

When used in the Technology & Telecommunications Liability **Coverage Part** or the Network Security & Privacy Injury **Coverage Part**, **Property Damage** does not include electronic data. As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

---

**SINGLE LOSS**

Copyright © CNA  All Rights Reserved.





**GLOSSARY OF DEFINED TERMS**
**NOT-FOR-PROFIT**

**Single Loss** means all **Loss** arising from each **Claim**.

---

## STOCK BENEFITS

**Stock Benefits** means:

1. any offering, plan or agreement between the **Named Insured** and any **Employee** which grants stock, stock warrants or stock options of the **Named Insured** to any such Employee, including but not limited to grants of stock options, restricted stock, stock warrants, performance stock shares, or any other compensation or incentive granted in the form of securities of the **Named Insured**; or

2. any payment or instrument in the amount or value of which is derived from the value of securities of the **Named Insured**, including but not limited to stock appreciation rights or phantom stock plans or arrangements.

However, **Stock Benefits** shall not include employee stock ownership plans or employee stock purchase plans.

---

## SUBSIDIARY

**Subsidiary** means:

1. any not-for-profit entity in which the **Named Insured** has **Management Control** directly or indirectly through one or more other **Subsidiaries**:

    a. on or before the effective date of this Policy; or

    b. after the effective date of this Policy by reason of being created or acquired by the **Named Insured** and any **Subsidiary** after such date, if and to the extent coverage with respect to the entity is afforded pursuant to Section **V.**, **COVERAGE FOR NEW SUBSIDIARIES** of this **Coverage Part**; or

2. any -for-profit entity formed by any **Insured Entity** and which is listed in a For Profit Insured Entity endorsement attached to this Policy.

However, when used in the Crime **Coverage Part**, **Subsidiary** has the meaning set forth therein.

---

## TAKEOVER

**Takeover** means:

1. the acquisition by another entity or person, or group of entities or persons acting in concert, of:

    a. the **Management Control** of the **Named Insured**; or,

    b. assets of the **Named Insured** resulting in the ownership of more than 50% of the total consolidated assets of **Named Insured** as of the date of the **Named Insured's** most recent audited consolidated financial statement prior to such acquisition;

2. the merger of the **Named Insured** into another entity such that the **Named Insured** is not the surviving entity; or,

3. the consolidation of the **Named Insured** with another entity.

GSL13699XX (Ed. 03-10)
Page 11

Copyright © CNA  All Rights Reserved.



**Epack** Extra
GLOSSARY OF DEFINED TERMS
NOT-FOR-PROFIT

---

## VOLUNTARY COMPLIANCE PROGRAM

**Voluntary Compliance Program** means any voluntary compliance resolution program or similar voluntary settlement program administered by the United States Internal Revenue Service, the United States Department of Labor or other similar governmental authority located outside the United States, including without limitation:

1. the Employee Plans Compliance Resolution System consisting of the Self-Correction Program, the Voluntary Compliance Resolution Program and the Audit Closing Agreement Program all as set forth in IRS Revenue Procedure 2003-44 (as amended, modified, expanded or superseded by any successor Revenue Procedure); or

2. Delinquent Filer Voluntary Compliance Program, and the Voluntary Fiduciary Correction Program administered by the Department of Labor.

## WELFARE PLAN

**Welfare Plan** means any employee welfare benefit plan as defined in 29 U.S.C. §1002, subject to regulation under **ERISA or any Similar Act**. **Welfare Plan** shall not include an excess benefit plan as defined in 29 U.S.C. §1002.

## WHISTLEBLOWER ACTIVITY

**Whistleblower Activity** means the kind of activity protected under a federal or state whistleblower statute or any regulation promulgated thereunder, regardless of whether or not such activity is done by an **Employee** protected under such statute or regulation.

## WRONGFUL ACT

**Wrongful Act** has the meanings set forth below.

I. When used in the Directors & Officers Liability **Coverage Part – Not-For-Profit Entities**, **Wrongful Act** means:

1. any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty (including **Personal Injury/Proprietary Injury** and violations of the privacy provisions of the Health Insurance Portability and Accountability Act (HIPAA)) committed or attempted by:

a. the **Insured Persons** in their capacity as such; or

b. the **Insured Entity** or by any natural person for whose **Wrongful Act** the **Insured** is legally responsible; or,

2. any matter claimed against the **Insured Persons** solely by reason of their serving in such capacity.

II. When used in the Employment Practices Liability **Coverage Part**, **Wrongful Act** means any actual or alleged error, misstatement, misleading statement, act, omission, neglect or breach of duty committed or attempted by the **Insured Persons** in their capacity as such or by an **Insured Entity**.

GSL13699XX (Ed. 03-10)
Page 12

Copyright © CNA All Rights Reserved.



**Epack** Extra

**GLOSSARY OF DEFINED TERMS**
**NOT-FOR-PROFIT**

**III.** When used in the Fiduciary Liability **Coverage Part**, **Wrongful Act** means:

1. any actual or alleged error, omission, negligent act, misstatement, misleading statement, neglect or breach of duty imposed upon an **Insured** by ERISA or **any Similar Act**, solely in such **Insured's** capacity as a **Fiduciary** of a **Plan**, or any matter claimed against an **Insured** solely by reason of his, her or its status as a **Fiduciary** of a **Plan**;

2. any actual or alleged error, omission, negligent act, misstatement, misleading statement, neglect or breach of duty committed or attempted by the **Insureds**, including any violation of regulation 45 CFR, Subchapter C, Part 164, under the Health Insurance Portability and Accountability Act of 1996, solely in such **Insured's** capacity as an **Administrator**; or,

3. the failure to properly or timely provide COBRA notices, but only with respect to a **Plan**.

---

**WRONGFUL EMPLOYMENT PRACTICE**

**Wrongful Employment Practice** means any **Wrongful Act** constituting or relating to:

1. wrongful dismissal, discharge or termination of employment, whether actual or constructive;

2. employment-related misrepresentation;

3. violation of any federal, state or local laws (whether common-law or statutory) concerning employment or discrimination in employment, including the Americans with Disabilities Act of 1992, the Civil Rights Act of 1991, the Age Discrimination in Employment Act of 1967, Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866 and the Family and Medical Leave Act of 1993;

4. sexual harassment or other unlawful harassment;

5. wrongful deprivation of career opportunity, demotion, failure to grant tenure, failure to employ or promote; failure to afford partnership or other equity status and failure to train;

6. wrongful discipline of **Employees**;

7. retaliation against **Employees** for the exercise of any legally protected right or for engaging in any legally protected activity;

8. negligent evaluation of **Employees**, negligent hiring, negligent supervision, and negligent training;

9. failure to adopt adequate workplace or employment policies and procedures;

10. employment-related libel, slander or defamation, humiliation or invasion of privacy;

11. employment-related wrongful infliction of emotional distress;

12. solely with respect to any natural person other than an **Employee**, any actual or alleged discrimination, sexual harassment or violation of an individual's civil rights relating to such discrimination or sexual harassment; or

13. breach of a written contract of employment.

Copyright © CNA  All Rights Reserved.



Extra

**DIRECTORS & OFFICERS LIABILITY COVERAGE PART- NOT-FOR-PROFIT**

| I. | INSURING AGREEMENT |
|---|---|

### A. <u>Management Liability (Individual) – Non-Indemnifiable Loss</u>

The Insurer shall pay on behalf of the **Insured Persons** (including **Outside Entity Executives**) that **Loss** up to the applicable limit of liability, resulting from any **Claim** first made against them during the **Policy Period** or the Extended Reporting Period, if applicable, for a **Wrongful Act**, except and to the extent that the **Insured Entity** has indemnified them for such **Loss**.

### B. <u>Management Liability – Indemnifiable Loss</u>

The Insurer shall pay on behalf of an **Insured Entity**        that **Loss**, in excess of the retention (if any) and up to the applicable limit of liability, for which such **Insured Entity** has indemnified an **Insured Person** and which results from any **Claim** first made against such **Insured Person** during the **Policy Period** or the Extended Reporting Period, if applicable, for a **Wrongful Act**.

### C. <u>Insured Entity Liability</u>

The Insurer shall pay on behalf of **Insured Entity**    that **Loss**, in excess of the retention (if any) and up to the applicable limit of liability, resulting from any **Claim** first made during the **Policy Period** or the Extended Reporting Period, if applicable, against the **Insured Entity** for a **Wrongful Act**.

provided, however, that such **Claim** must be reported in accordance with Section **XXII. NOTICE/DATE OF CLAIM/INTERRELATED CLAIM CLAUSE** of the General Terms and Conditions for coverage to apply.

| II. | EXCLUSIONS |
|---|---|

### A. Exclusions Applicable to All Insureds

The Insurer shall not be liable to pay any **Loss** under this **Coverage Part** in connection with any **Claim** made against any **Insured**:

#### 1. Bodily Injury/Property Damage

for any actual or alleged bodily injury (including death), sickness, disease, emotional distress, mental anguish or humiliation of any person, or **Property Damage**;

#### 2. Claims by Insured Entity

by or on behalf of    any **Insured Entity** in any capacity provided, however that this exclusion shall not apply to:

a.  any **Claim** brought derivatively on behalf of the **Insured Entity** provided that such **Claim** is brought and maintained solely by persons acting independent of and without the solicitation, assistance, active

GSL24342XX (01-2011)
Page 1

Copyright © CNA  All Rights Reserved.

 Extra

**DIRECTORS & OFFICERS LIABILITY COVERAGE PART- NOT-FOR-PROFIT**

participation or intervention of the **Insured Entity** or any **Executive** (unless such solicitation, assistance, participation or intervention is **Whistleblower Activity**); or

b.  any **Claim** that is in the form of a cross claim, third-party claim or otherwise for contribution or indemnity which is part of and results directly from a **Claim** which is not otherwise excluded under this Policy; or

c.  any **Claim** brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, liquidator, receiver, rehabilitator or creditors committee for an **Insured Entity** or any assignee of such trustee, examiner, liquidator, receiver or rehabilitator or creditors committee;

3.  **Discrimination or Harassment/Fair Labor Standards Act**

by any third party or independent contractor alleging any actual or alleged:

a.  discrimination or harassment including but not limited to violation of any federal, state or local laws (whether common-law or statutory) concerning discrimination including the Americans with Disabilities Act of 1990, the Civil Rights Act of 1991, the Age Discrimination in Employment Act of 1967, Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1866; or

b.  violation of the Fair Labor Standards Act as amended, or any other federal, state or local statutory law or common law anywhere in the world governing wage, hour and payroll policies;

4.  **ERISA or any Similar Act**

for any actual or alleged violation of the responsibilities, obligations or duties imposed upon fiduciaries by **ERISA or any Similar Act**;

5.  **Illegal Profits/Deliberate Acts**

where:

a.  such **Insureds** in fact gained any profit, remuneration or pecuniary advantage to which they were not legally entitled;

b.  such **Insureds** committed any fraudulent or criminal **Wrongful Act** with actual knowledge of its wrongful nature or with intent to cause damage or

c.  such **Insureds** willfully violated any statute or regulation,

as evidenced by a final adjudication by a judge, jury or arbitrator in any proceeding.

For purposes of determining the applicability of this exclusion:

Copyright © CNA  All Rights Reserved.

 Extra

**DIRECTORS & OFFICERS LIABILITY COVERAGE PART- NOT-FOR-PROFIT**

1. the facts pertaining to and knowledge possessed by any **Insured Person** shall not be imputed to any other **Insured Person**; and

2. only facts pertaining to and knowledge possessed by any past, present or future Chief Executive Officer, Executive Director, Chairperson, Chief Financial Officer, President (or any equivalent position) of an **Insured Entity** shall be imputed to all **Insured Entities**;

### 6. Outside Entity vs. Insured Persons

made against an **Outside Entity Executive** by or on behalf of the **Outside Entity** or one or more of the **Outside Entity's** directors, officers, trustees, governors or equivalent executives; provided, however, that this exclusion shall not apply to:

a. any **Claim** brought derivatively on behalf of the **Outside Entity** provided that such **Claim** is brought and maintained solely by persons acting independent of and without the solicitation, assistance, active participation or intervention of the **Outside Entity** or any **Outside Entity Executive** (unless such solicitation, assistance, participation or intervention is **Whistleblower Activity**);

b. any Claim that is in the form of a crossclaim, third-party claim or otherwise for contribution or indemnity which is part of and results directly from a Claim which is not otherwise excluded under this Policy;

c. any Claim brought or maintained by or on behalf of a bankruptcy or insolvency trustee, examiner, liquidator, receiver, rehabilitator or creditors committee for an Outside Entity or any assignee of such trustee, examiner, liquidator, receiver or rehabilitator or creditors committee;

d. any Claim brought by any past directors, officers, trustees, governors or equivalent executives of an Outside Entity who has not served as a duly elected or appointed past directors, officers, trustees, governors or equivalent executives of for an Outside Entity for at least three (3) years prior to such Claim being first made against any person; or,

e. any Claim brought and maintained by a director, officer, trustee or governor, management committee member or Manager of an Outside Entity in a jurisdiction outside the United States of America, Canada or Australia;

### 7. Pollutants

based upon or arising out of:

a. any nuclear reaction, radiation or contamination, or any actual, alleged or threatened discharge, release, escape, or disposal of, or exposure to, **Pollutants**;

Copyright © CNA All Rights Reserved.



**DIRECTORS & OFFICERS LIABILITY COVERAGE PART- NOT-FOR-PROFIT**

   b.  any request, direction or order that any of the **Insureds** test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effect of **Pollutants** or nuclear reaction, radiation or contamination, or any voluntary decision to do so; or

   c.  any actual or alleged **Property Damage**, bodily injury, sickness, disease or death of any person, or financial loss to the **Insured Entity** or any **Outside Entity**, their security holders, or their creditors resulting from any of the aforementioned matters;

However, this exclusion shall not apply to the extent there is no indemnification of the **Insured Persons** for such **Claim** by the **Insured Entity**;

## 8. Prior Notice

based upon or arising out of:

   a.  any **Wrongful Act** or any matter, fact, circumstance, situation, transaction, or event which has been the subject of any notice given by an **Insured** under any policy of which this Policy is a direct or indirect renewal or replacement; or

   b.  any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** described in a. above, would constitute **Interrelated Wrongful Acts**;

## 9. Prior or Pending

based upon or arising out of or constituting any civil, criminal, administrative or regulatory or alternative dispute resolution proceeding or investigation against any of the **Insureds** which was pending on or prior to the Prior or Pending Date set forth in the Declarations or the same or essentially the same fact, circumstance, situation, transaction or event underlying or alleged in such proceeding or investigation;

## 10. Prior Wrongful Acts of Subsidiaries

for:

   a.  any **Wrongful Act** by **Insured Persons** of any **Subsidiary** or by such **Subsidiary**, occurring before the date such entity became a **Subsidiary**; or,

   b.  any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** described in a. above, would constitute **Interrelated Wrongful Acts**;

## 11. Wrongful Acts of Executives of other Entities

for any **Wrongful Act** by such **Insured Person** while serving in the capacity, or solely by reason of their status, as a director, officer, trustee, governor, manager, employee or similar position in any entity, other than an **Insured Entity** or an **Outside Entity**.

GSL24342XX (01-2011)
Page 4

Copyright © CNA  All Rights Reserved.

 Extra

**DIRECTORS & OFFICERS LIABILITY COVERAGE PART- NOT-FOR-PROFIT**

### B. Exclusions Applicable to the Insured Entity

The Insurer shall not be liable to pay any **Loss** under this **Coverage Part** in connection with any **Claim** made against the **Insured Entity**:

**1. Employment Related Wrongful Acts**

based upon or arising out of any employment-related **Wrongful Act**;

**2. Violation of Law**

for any actual or alleged violation of: the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA),     any law governing workers' compensation, unemployment insurance, social security, disability benefits; the Occupational Safety and Health Act of 1970 (OSHA),     the Workers' Adjustment and Retraining Notification Act, Public Law 100-379 (1988), the National Labor Relations Act; and the Fair Labor Standards Act, all  as amended, or any regulations thereunder or any similar federal, state or local statutory law or common law.

## III.   ORDER OF PAYMENTS

If the amount of any covered **Loss** which is otherwise due and owing by the Insurer under this **Coverage Part** exceeds the then-remaining Limit of Liability of this Policy, the Insurer shall pay such **Loss** under this **Coverage Part** (subject to such Limit of Liability) in the following priority:

**A.** first, the Insurer shall pay **Loss** to the **Insured Persons**; then

**B.** only after payment of **Loss** has been made pursuant to 1. above, with respect to whatever remaining amount of the Limit of Liability is available after such payment, at the written request of the chief executive officer, or equivalent officer, of the **Named Insured**, the Insurer shall either pay or withhold payment of such other **Loss** for which coverage is provided to the **Insured Entity**.

In the event the Insurer withholds payment pursuant to Paragraph 2. above, then the Insurer shall at such time and in such manner as shall be set forth in written instructions from the Chief Executive Officer, or equivalent officer, of the **Named Insured** remit such payment to an **Insured Entity** or directly to or on behalf of an **Insured Person**. The Insurer's liability with respect to any such delayed **Loss** payment shall not be increased, and shall not include any interest, on account of such delay.

The bankruptcy or insolvency of any **Insured Entity** or any **Insured Person** shall not relieve the Insurer of any of its obligations to prioritize payment of covered **Loss** under this **Coverage Part** pursuant to this Section.

Copyright © CNA  All Rights Reserved.



Extra

**DIRECTORS & OFFICERS LIABILITY COVERAGE PART- NOT-FOR-PROFIT**

---

| IV. | COORDINATION WITH EMPLOYMENT PRACTICES LIABILITY COVERAGE SECTION |
|---|---|

If a **Claim** is covered under both this **Coverage Part** and the Employment Practices Liability **Coverage Part** then such **Claim** first shall be covered pursuant to the Employment Practices Liability **Coverage Part**, including its limit of liability and retention. Any remaining **Loss** otherwise covered by this **Coverage Part** which is not paid under such Employment Practices Liability **Coverage Part** shall be covered pursuant to this **Coverage Part**, including its limit of liability and retention; provided any applicable Retention under this **Coverage Part** shall be reduced by the amount of **Loss** (otherwise covered by this **Coverage Part**) which is paid by the **Insureds** as the retention under such Employment Practices Liability **Coverage Part**.

| V. | COVERAGE FOR NEW SUBSIDIARIES |
|---|---|

A. If, after the effective date of this Policy:

1. an **Insured Entity** creates or acquires a not-for-profit entity, or

2. an **Insured Entity** merges with another not-for-profit entity such that an **Insured Entity** is the surviving entity,

then such entity, and any subsidiaries, directors, officers, trustees or employees of such entity who otherwise would thereby become an **Insured**, shall be automatically covered under this Policy, subject to its terms and conditions.

B. There shall be no coverage for any **Wrongful Act** by such created, acquired or merged entity or **Plan**, or by any persons or entities considered to be **Insureds** pursuant to paragraph A of this Section, where such **Wrongful Act** occurred in whole or in part before the effective date of such acquisition or merger or for any **Wrongful Act** occurring on or after such date which, together with any **Wrongful Acts** occurring before such date, would be considered **Interrelated Wrongful Acts**.

Copyright © CNA All Rights Reserved.



**Epack** Extra
**FIDUCIARY LIABILITY COVERAGE PART**

| I. | **INSURING AGREEMENT** |
|---|---|

The Insurer shall pay on behalf of the **Insured** that **Loss**, in excess of the retention and up to the applicable limit of liability, resulting from any **Claim** first made against any **Insured** during the **Policy Period** or the Extended Reporting Period, if applicable, for a **Wrongful Act** by such **Insured** or by any natural person for whose **Wrongful Act** such **Insured** is legally responsible. Provided, however that such **Claim** must be reported in accordance with Section **XXII. NOTICE/DATE OF CLAIM/INTERRELATED CLAIM CLAUSE** of the General Terms and Conditions for coverage to apply.

| II. | **EXCLUSIONS** |
|---|---|

**A. Exclusions Applicable to All Loss**

The Insurer shall not be liable to pay any **Loss** under this **Coverage Part** in connection with any **Claim** made against any **Insured**:

1. **Assumed Liability**

    based upon or arising out of liability of others assumed by any **Insured** under any contract or agreement, however, this exclusion shall not apply to the extent that:

    a. the **Insured** would have been liable in the absence of such contract or agreement; or

    b. the liability was assumed in accordance with or under the trust instrument or equivalent documents governing the assets of the **Plan**;

2. **Bodily Injury/Property Damage**

    for any actual or alleged bodily injury (including death), sickness, disease, emotional distress, mental anguish, libel, slander or defamation of any person, or **Property Damage**;

3. **Discrimination**

    for discrimination in violation of any law other than **ERISA or any Similar Act**;

4. **Illegal Profits/Deliberate Acts**

    where:

    a. such **Insured** in fact gained any profit, remuneration or pecuniary advantage to which they were not legally entitled; or,

    b. such **Insured** committed any fraudulent or criminal **Wrongful Act** with actual knowledge of its wrongful nature or with intent to cause damage;

    as evidenced by a final adjudication by a judge, jury or arbitrator in any proceeding;

    For purposes of determining the applicability of this exclusion:

    i. the facts pertaining to and knowledge possessed by any **Insured Person** shall not be imputed to any other **Insured Person**; and,

Copyright © CNA  All Rights Reserved.





**FIDUCIARY LIABILITY COVERAGE PART**

    ii.   only facts pertaining to and knowledge possessed by any past, present or future Chief Executive Officer, Chairperson, Chief Financial Officer, President (or any equivalent position) of an **Insured Entity** shall be imputed to all **Insured Entities**; or past, present or future trustee or **Administrator** of a **Plan** shall be imputed to all **Plans**;

5. **Prior Notice**

based upon or arising out of:

    a.  any **Wrongful Act** or any matter, fact, circumstance, situation, transaction, or event which has been the subject of any notice given by an **Insured** under any policy of which this Policy is a direct or indirect renewal or replacement; or

    b.  any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** described in a. above, would constitute **Interrelated Wrongful Acts**;

6. **Prior or Pending**

based upon or arising out of or constituting any administrative or regulatory or alternative dispute resolution proceeding or investigation against any of the **Insureds** which was pending on or prior to the Prior or Pending Date set forth in the Management Liability Declarations or the same or essentially the same fact, circumstance, situation, transaction or event underlying or alleged in such proceeding or investigation;

7. **Prior Wrongful Acts of Subsidiaries**

for:

    a.  any **Wrongful Act** by **Insured Persons** or **Plans** of any **Subsidiary** or by such **Subsidiary**, occurring before the date such entity became a **Subsidiary**; or,

    b.  any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** described in a. above, would constitute **Interrelated Wrongful Acts**;

8. **Pollutants**

based upon or arising out of:

    a.  any nuclear reaction, radiation or contamination, or any actual, alleged or threatened discharge, release, escape, or disposal of, or exposure to, **Pollutants**;

    b.  any request, direction or order that any of the **Insureds** test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effect of **Pollutants** or nuclear reaction, radiation or contamination, or any voluntary decision to do so; or

    c.  any actual or alleged **Property Damage**, bodily injury, sickness, disease or death of any person, or financial loss to the **Insured Entity** or the **Plan**, their security holders, or their creditors resulting from any of the aforementioned matters.

However this exclusion shall not apply to:

    i.   any **Claim** by or on behalf of a beneficiary of or participant in any **Plan** by reason of the diminution in value of any securities (other than the **Insured Entity's** securities)

GSL12041XX (Ed. 03-10)

Copyright © CNA All Rights Reserved.





**FIDUCIARY LIABILITY COVERAGE PART**

owned by the **Plan**, resulting from, or allegedly resulting from, any of the aforementioned matters; or

ii. **Non-Indemnifiable Loss**.

## B. Exclusions Applicable to Loss Other than Defense Costs

The Insurer shall not be liable to pay that portion of **Loss**, other than **Defense Costs**, which constitutes:

### 1. Benefits Due

benefits due or to become due under any **Plan**, or benefits which would be due under any **Plan** if such **Plan** complied with all applicable law, except to the extent that:

a. an **Insured Person** is legally obligated to pay such benefits as a personal obligation, and recovery for the benefits is based upon a covered **Wrongful Act**; or

b. the **Claim** alleges that a covered **Wrongful Act** caused or contributed to a reduction or loss in the value of the **Plan's** assets and/or to the accounts of such **Plan's** participants by reason of a change in the value of the investments held by such **Plan**, regardless of whether the amounts sought or recovered by the plaintiffs in such **Claim** are characterized by plaintiffs as benefits or held by a court to be benefits;

### 2. Non-Monetary Relief

any costs incurred by an **Insured** to comply with any order for remedial, preventive, injunctive or other non-monetary relief, or to comply with an agreement to provide such relief;

### 3. Owed Contributions

an employer's contributions owed to a **Plan**.

For the purpose of determining the applicability of any exclusion set forth in this subsection B., the **Wrongful Act** of any **Insured Person** shall not be imputed to any other **Insured Person**.

---

## III.   SUPPLEMENTARY PAYMENTS

The Insurer shall reimburse the **Insured**, subject to the aggregate Limit of Liability, up to $150,000.00 for **Compliance Costs** incurred during the **Policy Period** in connection with any **Voluntary Compliance Programs** provided the **Insured** gives prior written notice to the Insurer of its intent to enter into such **Voluntary Compliance Programs** during the **Policy Period**. This supplementary payment is part of and not in addition to the Limit of Liability for the Fiduciary Liability **Coverage Part** stated in the Management Liability **Coverage Part** Declarations. No retention applies to this supplementary payment.

Copyright © CNA All Rights Reserved.



**Epack** Extra
**EMPLOYMENT PRACTICES LIABILITY COVERAGE PART**

| I. | **INSURING AGREEMENT** |
|---|---|

The Insurer shall pay on behalf of **Insured** that **Loss**, in excess of the retention and up to the applicable limit of liability, resulting from any **Claim** first made against the **Insureds** during the **Policy Period** or the Extended Reporting Period, if applicable, by or on behalf of:

**A.** a natural person who is an **Employee** or an applicant for employment for a **Wrongful Employment Practice** as described in paragraphs 1. through 11. of the definition of **Wrongful Employment Practice**.

**B.** any other natural person, for a **Wrongful Employment Practice** but solely to the extent that such **Wrongful Employment Practice** is as described in paragraph 12. of the definition of **Wrongful Employment Practice**.

Provided, however, that such **Claim** must be reported in accordance with Section **XXII. NOTICE/DATE OF CLAIM/INTERRELATED CLAIM CLAUSE** of the General Terms and Conditions for coverage to apply.

| II. | **EXCLUSIONS** |
|---|---|

**A. Exclusions Applicable to All Loss**

The Insurer shall not be liable to pay any **Loss** under this **Coverage Part** in connection with any **Claim** made against any **Insured**:

1. **Bodily Injury /Property Damage**

   for any actual or alleged bodily injury (including death), sickness, disease of any person, or **Property Damage** except that this exclusion shall not apply to allegations of emotional distress, humiliation, mental anguish or loss of reputation;

2. **Prior Notice**

   based upon or arising out of:

   a. any **Wrongful Act** or any matter, fact, circumstance, situation, transaction, or event which has been the subject of any notice given by an **Insured** under any policy of which this Policy is a direct or indirect renewal or replacement; or

   b. any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** described in a. above, would constitute **Interrelated Wrongful Acts**;

3. **Prior or Pending**

   based upon or arising out of or constituting any administrative or regulatory or alternative dispute resolution proceeding or investigation against any of the **Insureds** which was pending on or prior to the Prior or Pending Date set forth in the Management Liability Declarations or the same or essentially the same fact, circumstance, situation, transaction or event underlying or alleged in such proceeding or investigation;

4. **Prior Wrongful Acts of Subsidiaries**

Copyright © CNA  All Rights Reserved.





**EMPLOYMENT PRACTICES LIABILITY COVERAGE PART**

for:

a. any actual or alleged **Wrongful Act** by **Insured Persons** of any **Subsidiary,** or by such **Subsidiary,** occurring before the date such entity became a **Subsidiary**, or

b. any other actual or alleged **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** described in a. above, would constitute **Interrelated Wrongful Acts**;

5. **Pollutants**

based upon or arising out of:

a. any nuclear reaction, radiation or contamination, or any actual, alleged or threatened discharge, release, escape, or disposal of, or exposure to, **Pollutants**;

b. any request, direction or order that any of the **Insureds** test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to or assess the effect of **Pollutants** or nuclear reaction, radiation or contamination, or any voluntary decision to do so;

c. any actual or alleged **Property Damage**, bodily injury, sickness, disease or death of any person, or financial loss.

6. **Violation of Law**

a. for any actual or alleged violation of:

i. **ERISA or any Similar Act**, or any other federal, state or local statutory law or common law anywhere in the world governing any employee benefit program, policy, plan or arrangement of any type, including but not limited to laws governing retirement or pension benefit programs, welfare plans, insurance plans, employee stock options, employee stock ownership or employee stock purchase plans or deferred compensation programs;

ii. the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), as amended or any other similar federal, state or local statutory or regulatory law or common law anywhere in the world;

iii. any law governing workers' compensation, unemployment insurance, social security, disability benefits or any other similar federal, state or local statutory or regulatory law or common law anywhere in the world;

iv. the Occupational Safety and Health Act of 1970 (OSHA), as amended, or any other federal, state or local statutory or regulatory law or common law anywhere in the world governing workplace safety and health;

v. the Workers' Adjustment and Retraining Notification Act, Public Law 100-379 (1988), as amended, or any other federal, state or local statutory or regulatory law or common law anywhere in the world governing an employer's obligation to notify or bargain with others in advance of any facility closing or mass layoff;

vi. the National Labor Relations Act, as amended, or any other federal, state or local statutory or regulatory law or common law anywhere in the world governing

Copyright © CNA  All Rights Reserved.





**EMPLOYMENT PRACTICES LIABILITY COVERAGE PART**

employees' rights and the employers duties with respect to unions, bargaining, strikes, boycotts, picketing, lockouts or collective activities; and,

b. based upon or arising out of any actual or alleged violation of: the Fair Labor Standards Act (except the Equal Pay Act), as amended, or any other federal, state or local statutory law or common law anywhere in the world governing wage, hour and payroll policies.

However, exclusions 5. and 6. do not apply to any **Claim** alleging retaliation (including any **Claim** alleging retaliation in violation of Section 510 of ERISA) or wrongful dismissal or discharge or termination of employment whether actual or constructive, because of:

a. with respect to exclusion 5., a claimant's actual or threatened disclosure of the matters described in the Pollutants Exclusion; and

b. with respect to exclusion 6., a claimant's exercise of a right pursuant to any such laws.

**B. Exclusions Applicable To Loss Other than Defense Costs**

The Insurer shall not be liable under this **Coverage Part** to pay that portion of **Loss**, other than **Defense Costs**, which constitutes:

**1. Cost of Accommodations**

the costs associated with providing any reasonable accommodations required by, made as a result of, or to conform with the requirements of the Americans With Disabilities Act and any amendments thereto or any similar federal, state or local statute, regulation, or common laws;

**2. Non-monetary Relief**

the cost of any non-monetary relief, including without limitation any costs associated with compliance with any injunctive relief of any kind or nature imposed by any judgment or settlement.

---

| III. | RISK MITIGATION |
|------|-----------------|

A.   The Insurer will reduce the **Insured Entity's** retention for a **Claim** by 50%, up to $10,000, whichever is less, if the **Insured Entity**, involved in such **Claim**, demonstrates, to the Insurer's reasonable satisfaction, the existence of the following four (4) conditions:

1.   proof of legal review and sign-off of in-force employment practices policies and procedures for harassment, discrimination and employee grievance by outside counsel who specializes in employment practices law;

2.   proof of distribution of employment practices policies and procedures on harassment, discrimination and employee grievance, to all employees;

3.   proof that all directors, officers and managers of the **Insured Entity** have attended outside training and education programs on sexual harassment within the last 24 months prior to the filing of a **Claim**; and,

GSL12040XX (Ed. 03-10)

Copyright © CNA All Rights Reserved.



**Epack** Extra
**EMPLOYMENT PRACTICES LIABILITY COVERAGE**
**PART**

    4.    a copy of the **Insured Entity's** written policy on email or other electronic communications.

**B.**    In the event that one **Claim** is eligible for both this Risk Mitigation Credit Section and the Mediation provision found in the General Terms and Conditions, Section **XXI. DEFENSE/SETTLEMENT/MEDIATION/PRE-CLAIM ASSISTANCE** Paragraph B.2 Mediation, then the **Insured Entity** shall receive only the benefit of one retention credit, but not both. In no way shall either section be construed to afford any more than a total of 50% or $10,000 credit toward any one retention for any one **Claim**.

Copyright © CNA All Rights Reserved.



## ADDITION OF SUBSIDIARY ENDORSEMENT

In consideration of the premium paid for this policy, it is agreed that the Glossary of Defined Terms is amended as follows:

The definition of **Subsidiary** is amended by the addition of the following:

Subsidiary shall also mean the below-listed entity as of the effective date given:

<u>Entity Name</u>                    <u>Effective Date</u>

Academy of Country Music Lifting Lives 1/1/2014

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

G-139025-A (3-10)
Page 1

Policy No: 596415107
Endorsement 1
No:
Effective Date: 02/01/2016

Continental Casualty Company
Insured Name: Academy of Country Music

© CNA All Rights Reserved.



## MEDIA ACTIVITY EXCLUSION

In consideration of the premium paid for this Policy, it is agreed that the Directors & Officers Liability **Coverage Part – Not-for-Profit, Section II. EXCLUSIONS, Paragraph A. Exclusions Applicable to All Insureds**, is amended to add the following new exclusion:

**Media Activity**

based upon or arising out of any **Media Activity**;

For the purposes of this endorsement, **Media Activity** means:

1.   gathering, acquiring, obtaining, researching, developing, editing, preparing, filming, videotaping and recording material; or

2.   the dissemination or utterance of material, by any means, including:

    a.   publishing, producing, printing, advertising, marketing, promoting and exhibiting;

    b.   broadcasting, telecasting, webcasting, cable casting; or,

    c.   syndicating, selling, leasing, licensing, distributing, serializing or releasing material;

    through any medium, including but not limited to wireless or electronic medium.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

---

GSL24353XX (1-11)
Page 1

Policy No:   596415107
Endorsement   2
No:
Effective Date:   02/01/2016

Continental Casualty Company
Insured Name: Academy of Country Music

© CNA All Rights Reserved.



## SUBLIMIT FOR SPECIFIED COVERAGE PART ENDORSEMENT
## FOR USE WITH A SINGLE LIMIT OF LIABILITY

In consideration of the premium paid for this Policy, it is agreed that the General Terms & Conditions are amended as follows:

Solely with respect to the following **Coverage Part**:

Fiduciary Liability

Section **XX. LIMITS OF LIABILITY/RETENTIONS** is amended by the addition of the following:

- the **Policy Year** Limit of Liability for the **Coverage Part** shown above shall be:

  $1,000,000

  This amount shall be the maximum **Policy Year** aggregate Limit of Liability of the Insurer for all **Loss** under this **Coverage Part**, regardless of the number of **claims** made against the **Insureds**;

- this Limit of Liability is a sublimit of liability to the Single Limit of Liability as set forth in the Declarations and is subject to the Aggregate Limit of Liability of the Policy. As such, this sublimit further reduces and in no way will it increase the Insurer's maximum liability under the Policy;

- If the sublimit of liability is exhausted by payment of **Loss**, the Insurer's obligations under the **Coverage Part** shown above shall be completely fulfilled and extinguished, regardless of any unexhausted limits of liability that may remain under the Policy.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

PRO3090G (3-10)
Page 1

Policy No: 596415107
Endorsement No: 3
Effective Date: 02/01/2016

Continental Casualty Company
Insured Name: Academy of Country Music

© CNA All Rights Reserved.



## PROFESSIONAL SERVICES EXCLUSION

In consideration of the premium paid for this Policy, it is agreed that the Directors & Officers Liability **Coverage Part** -Not-for-Profit, Section **II. EXCLUSIONS**, Paragraph **A. Exclusions Applicable to All Insureds**, is amended to add the following new exclusion:

- based upon or arising out of any **Wrongful Act** in connection with the performance of professional services by or on behalf of the **Insured Entity**, for the benefit of any other entity or natural person;

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

GSL24356XX (1-11)
Page 1

Policy No:   596415107
Endorsement   4
No:
Effective Date:   02/01/2016

Continental Casualty Company
Insured Name: Academy of Country Music

© CNA All Rights Reserved.



## COPYRIGHT EXCLUSION

In consideration of the premium paid for this Policy, it is agreed that Section **II. Exclusions**, Subsection A. of the Directors and Officers Liability **Coverage Part** is amended by the addition of the following new Exclusion:

- **Intellectual Property**

    for any actual or alleged plagiarism, misappropriation, infringement or violation of copyright, patent, trademark, service mark, trade name, trade dress, trade secret or any other intellectual property rights;

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

GSL8648XX (3-10)
Page 1

Continental Casualty Company
Insured Name: Academy of Country Music

Policy No: 596415107
Endorsement 5
No:
Effective Date: 02/01/2016

© CNA All Rights Reserved.



## CANCELLATION/NON-RENEWAL ENDORSEMENT-CALIFORNIA

Wherever used in this endorsement: 1) Insurer means "we", "us", "our" or the "Company" as those terms are defined in the policy; and 2) Named Insured means the first person or entity named on the declarations page; and 3) "Insured(s)" means all persons or entities afforded coverage under the policy.

Any cancellation, non-renewal or termination provision(s) in the policy are deleted in their entirety and replaced with the following:

### CANCELLATION AND NON-RENEWAL

**A.   CANCELLATION**

1.   The Named Insured may cancel the policy at any time. To do so, the Named Insured must return the policy to the Insurer or any of its authorized representatives, indicating the effective date of cancellation; or provide a written notice to the Insurer, stating when the cancellation is to be effective.

2.   If the policy has been in effect for less than sixty (60) days and is not a renewal the Insurer may cancel the policy for any reason by mailing or delivering written notice to the Named Insured, at the last mailing address known to the Insurer, and the producer of record. The notice of cancellation will be provided at least thirty (30) days prior to the effective date of cancellation except that in the case of cancellation for nonpayment of premiums or for fraud the notice will be given no less than ten (10) days prior to the effective date of the cancellation.

3.   If the policy has been in effect for more than sixty (60) days or if it is a renewal, effective immediately, the Insurer may not cancel the policy unless such cancellation is based on one or more of the following reasons:

a.   Nonpayment of premium, including payment due on a prior policy issued by the Insurer and due during the current policy term covering the same risks.

b.   A judgment by a court or an administrative tribunal that the Named Insured has violated any law of this state or of the United States having as one of its necessary elements an act which materially increases any of the risks insured against.

c.   Discovery of fraud or material misrepresentation by either of the following:
(1)   The Named Insured or Insured(s) or a representative of same in obtaining the insurance; or
(2)   The Named Insured or his or her representative in pursuing a claim under the policy.

d.   Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by the Named Insured or Insured(s) or a representative of same, which materially increase any of the risks insured against.

---

GSL7541CA (11-04)
Page 1

Continental Casualty Company
Insured Named: Academy of Country Music

Policy No:  596415107
Endorsement  6
No:
Effective Date:  02/01/2016

© CNA All Rights Reserved.



e.   Failure by the Named Insured or Insured(s) or a representative of same to implement reasonable loss control requirements which were agreed to by the Named Insured as a condition of policy issuance or which were conditions precedent to the use by the Insurer of a particular rate or rating plan, if the failure materially increases any of the risks insured against.

f.   A determination by the commissioner that the loss of, or changes in, the Insurer's reinsurance covering all or part of the risk would threaten the financial integrity or solvency of the Insurer.

g.   A determination by the commissioner that a continuation of the policy coverage would place the Insurer in violation of the laws of this state or the state of its domicile or that the continuation of coverage would threaten the solvency of the Insurer.

h.   A change by the Named Insured or Insured(s) or a representative of same in the activities or property of the commercial or industrial enterprise which results in a material added risk, a materially increased risk or a materially changed risk, unless the added, increased, or changed risk is included in the policy.

A notice of cancellation will be in writing and will be delivered or mailed to the Named Insured, at the last mailing address known to the Insurer, and the producer of record at least thirty (30) days prior to the effective date of cancellation. Where cancellation is for nonpayment of premium or fraud, notice shall be given no less than ten (10) days prior to the effective date of cancellation.

4.   The notice will state the actual reason for the cancellation.

5.   Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6.   If notice is mailed, proof of mailing will be sufficient proof of notice.

## B.   NON-RENEWAL

1.   The Insurer can non-renew the policy by giving written notice to the Named Insured, at the last mailing address known to the Insurer, at least sixty (60) days but not more than one hundred twenty (120) days before the expiration date.

2.   The notice of non-renewal will state the actual reason for non-renewal.

3.   If notice is mailed, proof of mailing will be sufficient proof of notice.

4.   A notice of non-renewal will not be required in any of the following situations:

a.   The transfer of, or renewal of, a policy without change in its terms or conditions or the rate on which the premium is based between insurers that are members of the same insurance group.

GSL7541CA (11-04)
Page 2

Continental Casualty Company
Insured Named: Academy of Country Music

Policy No:  596415107
Endorsement  6
No:
Effective Date:  02/01/2016

© CNA All Rights Reserved.



b.  The policy has been extended for ninety (90) days or less, if the notice required has been given prior to the extension.

c.  The Named Insured has obtained replacement coverage or has agreed, in writing, within sixty (60) days of the termination of the policy, to obtain that coverage.

d.  The policy is for a period of no more than sixty (60) days and the Named Insured is notified at the time of issuance that it may not be renewed.

e.  The Named Insured requests a change in the terms or conditions or risks covered by the policy within sixty (60) days prior to the end of the policy period.

f.  The Insurer has made a written offer to the Named Insured, within the prescribed time period, to renew the policy under changed terms or conditions or at a changed premium rate, where the increase is more than 25%. As used herein, "terms or conditions" includes, but is not limited to, a reduction in limits, elimination of coverages, or an increase in deductibles.

5.  In the case of conditional renewal, failure of the Named Insured to satisfy conditions provided by the Insurer for renewal, by the expiration date of the policy or thirty (30) days after mailing or delivery of such notice, whichever is later, the conditional renewal shall be treated as an effective non-renewal.

## C. CONDITIONAL RENEWAL

1.  If the policy has been in effect for more than sixty (60) days or if the policy is a renewal, effective immediately no increase in premium, reduction in limits, or change in the conditions of coverage shall be effective during the policy period unless based upon one of the following reasons:

a.  Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards by the Named Insured or Insured(s) which materially increase any of the risks or hazards insured against.

b.  Failure by the Named Insured or Insured(s) to implement reasonable loss control requirements which were agreed to by the Insured as a condition of policy issuance or which were conditions precedent to the use by the Insurer of a particular rate or rating plan, if the failure materially increases any of the risks insured against.

c.  A determination by the commissioner that loss of or changes in an insurer's reinsurance covering all or part of the risk covered by the policy would threaten the financial integrity or solvency of the Insurer unless the change in the terms or conditions or rate upon which the premium is based is permitted.

d.  A change by the Named Insured or Insured(s) in the activities or property of the commercial or industrial enterprise which results in a materially added risk, a materially increased risk, or a materially changed risk, unless the added, increased, or changed risk is included in the policy.

GSL7541CA (11-04)
Page 3

Continental Casualty Company
Insured Named: Academy of Country Music

Policy No: 596415107
Endorsement No: 6
Effective Date: 02/01/2016

© CNA All Rights Reserved.



2. A written notice will be mailed or delivered to the Named Insured, at the last mailing address known to the Insurer, and the producer of record at least thirty (30) days prior to the effective date of any increase, reduction or change.

3. The notice will state the effective date of, and the reasons for, the increase, reduction or change

4. If notice is mailed, proof of mailing will be sufficient proof of notice.

All other terms and conditions of the policy remain unchanged.

---

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy and expires concurrently with said Policy unless another effective date is shown below.

By                                   Authorized                                   Representative

(No signature is required if issued with the Policy or if it is effective on the Policy Effective Date)

---

GSL7541CA (11-04)
Page 4

Continental Casualty Company
Insured Named: Academy of Country Music

Policy No: 596415107
Endorsement No: 6
Effective Date: 02/01/2016

© CNA All Rights Reserved.



## AMEND DEFENSE, SETTLEMENT AND CONSENT

In consideration of the premium paid for this Policy, it is understood and agreed that the General Terms & Conditions, Section **XXI. DEFENSE/SETTLEMENT/MEDIATION/PRE-CLAIM ASSISTANCE**, is amended as follows:

1.   Paragraph A. **Defense of Claims** is deleted in its entirety and replaced as follows:

     A.   **Defense of Claims**

          The Insurer has the right and duty to defend all **Claims** even if the allegations are groundless, false or fraudulent. The Insurer shall have the right to appoint counsel and to make such investigation and defense of a **Claim** as it deems necessary. The Insurer's obligation to defend any **Claim** or pay any **Loss**, including **Defense Costs**, shall be completely fulfilled and extinguished if the applicable limit of liability has been exhausted by payment of **Loss**.

2.   Paragraph B. **Settlement**, subparagraph 1. Consent is deleted in its entirety, except for the first sentence as follows:

     1.   Consent

          The Insurer shall not settle a **Claim** without the written consent of the **Named Insured**.

All other terms and conditions of the Policy remain unchanged.

> This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

GSL57799XX (2-12)                                         Policy No:  596415107
Page 1                                                    Endorsement  7
                                                          No:
Continental Casualty Company                              Effective Date:  02/01/2016
**Insured Name:** Academy of Country Music

© CNA All Rights Reserved.



## INDEPENDENT CONTRACTORS COVERAGE ENDORSEMENT

In consideration of the premium paid for this Policy, it is agreed that this endorsement amends the following **Coverage Parts**, if purchased:

Directors & Officers **Coverage Part** – Not-For-Profit
Employment Practices Liability **Coverage Part**

The Glossary of Defined Terms, the definition of **Employee** is amended to add the following new language:

- **Employee** also includes the following independent contractors who act on behalf of or at the direction of the **Insured Entity**.

  all independent contractors

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

GSL24362XX (1-11)
Page 1

Policy No: 596415107
Endorsement No: 8
Effective Date: 02/01/2016

Continental Casualty Company
Insured Name: Academy of Country Music

© CNA All Rights Reserved.



## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM
## ENDORSEMENT

## SCHEDULE

Solely with respect to any Coverage Part set forth in the Schedule, it is understood and agreed as follows:

Whenever used in this endorsement, 1) "we" means the insurer listed on the Declarations or the Certificate of Insurance, as applicable; and 2) "you" means the first person or entity named on the Declarations or the Certificate of Insurance, as applicable.

**A.    Cap on Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in consultation with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism pursuant to the Terrorism Risk Insurance Act, as extended and reauthorized (the "Act"). The criteria contained in the Act for a "certified act of terrorism" include the following:

1.    The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.    The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar  year (January 1 through December 31) and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B.    Application of Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

---

CNA81751XX (3-15)
Page 1

Policy No:  596415107
Endorsement  9
No:
Effective Date:  02/01/2016

Continental Casualty Company
Insured Name: Academy of Country Music

© CNA All Rights Reserved.



All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

CNA81751XX (3-15)
Page 2

Continental Casualty Company
Insured Name: Academy of Country Music

Policy No: 596415107
Endorsement 9
No:
Effective Date: 02/01/2016

© CNA All Rights Reserved.



**Policy Holder Notice – Countrywide**

# IMPORTANT INFORMATION

## NOTICE – OFFER OF TERRORISM COVERAGE;
## DISCLOSURE OF PREMIUM

**THIS NOTICE DOES NOT FORM A PART OF THE POLICY, GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

As used herein, 1) "we" means the insurer listed on the Declarations or the Certificate of Insurance, as applicable; and 2) "you" means the first person or entity named on the Declarations or the Certificate of Insurance, as applicable.

You are hereby notified that under the Terrorism Risk Insurance Act, as extended and reauthorized ("Act"), you have a right to purchase insurance coverage of losses arising out of acts of terrorism, as defined in Section 102(1) of the Act, subject to all applicable policy provisions. The Terrorism Risk Insurance Act established a federal program within the Department of the Treasury, under which the federal government shares, with the insurance industry, the risk of loss from future terrorist attacks.

This Notice is designed to alert you to coverage restrictions and to certain terrorism provisions in the policy. If there is any conflict between this Notice and the policy (including its endorsements), the provisions of the policy (including its endorsements) apply.

CHANGE IN THE DEFINITION OF A CERTIFIED ACT OF TERRORISM

The Act applies when the Secretary of the Treasury certifies that an event meets the definition of an act of terrorism. Originally, the Act provided that to be certified, an act of terrorism must cause losses of at least five million dollars and must have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest to coerce the government or population of the United States. However, the 2007 re-authorization of the Act removed the requirement that the act of terrorism must be committed by or on behalf of a foreign interest, and now certified acts of terrorism may encompass, for example, a terrorist act committed against the United States government by a United States citizen, when the act is determined by the federal government to be "a certified act of terrorism."

In accordance with the Act, we are required to offer you the ability to purchase coverage for losses resulting from an act of terrorism that is certified under the federal program. The other provisions of this policy, including nuclear, war or military action exclusions, will still apply to such an act.

DISCLOSURE OF FEDERAL PARTICIPATION IN PAYMENT OF TERRORISM LOSSES

The Department of the Treasury will pay a share of terrorism losses insured under the federal program. In 2015, the federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention, and shall decrease by 1 percentage point per calendar year until equal to 80%.

LIMITATION ON PAYMENT OF TERRORISM LOSSES

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.



**Policy Holder Notice – Countrywide**

Further, this coverage is subject to a limit on our liability pursuant to the federal law where, if aggregate insured losses attributable to terrorist acts certified under the Act exceed $100 billion in a calendar year (January 1 through December 31) and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion. In such case, insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

CONFIRMATION OF ACCEPTANCE OF COVERAGE

In accordance with the Act, we offered you coverage for losses resulting from an act of terrorism that is certified under the federal program. This notice confirms that you have chosen to accept our offer of coverage for certified acts of terrorism. The policy's other provisions, including nuclear, war or military action exclusions, will still apply to such an act. The premium charge for terrorism coverage, if any, is shown separately on the Declarations or the Certificate of Insurance, as applicable.

Copyright CNA All Rights Reserved.



## AMEND DEFINITION OF PLAN TO INCLUDE NON-QUALIFIED PLANS ENDORSEMENT

It is understood and agreed that the Glossary of Defined Terms is amended to add the following to the definition of **Plan**:

> Solely with respect to the Fiduciary Liability **Coverage Part, Plan** also includes any other employee benefit plan, which is not subject to Title 1. of **ERISA or Any Similar Act**, sponsored solely by the **Insured Entity** entirely for the benefit of its **Employees**.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

---

CNA79463XX (7-14)
Page 1

Continental Casualty Company
Insured Name: Academy of Country Music

Policy No: 596415107
Endorsement No: 11
Effective Date: 02/01/2016

© CNA All Rights Reserved.



## AMEND DEFINITION OF ADMINISTRATION SERVICES ENDORSEMENT
### (FIDUCIARY LIABILITY COVERAGE PART)

It is understood and agreed that solely with respect to the Fiduciary Liability **Coverage Part**, the Glossary of Defined Terms, the definition of **Administration Services** is amended by the addition of the following:

**Administration Services** also means interpreting **Plans** to **Employees**, **Plan** participants or beneficiaries;

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

CNA81101XX (3-15)
Page 1

Continental Casualty Company
Insured Name: Academy of Country Music

Policy No: 596415107
Endorsement No: 12
Effective Date: 02/01/2016

© CNA All Rights Reserved.



## AMEND DEFINITION OF LOSS ENDORSEMENT
### (PATIENT PROTECTION AND AFFORDABLE CARE ACT AND HEALTH CARE AND EDUCATION RECONCILIATION ACT OF 2010 WITH NO RETENTION)

In consideration of the premium paid for this Policy, it is understood and agreed that the Glossary of Defined Terms, the definition of **Loss** is amended to add a new subparagraph as follows to paragraph III, under "Fiduciary Liability **Coverage Part**, **Loss** does not include civil or criminal fines, penalties, taxes, sanctions or forfeitures, imposed on an **Insured** whether pursuant to law, statute, regulation or court rule other than":

- those civil fines and penalties imposed for an inadvertent violation of the Patient Protection and Affordable Care Act or the Health Care and Education Reconciliation Act of 2010 other than fines and penalties otherwise covered under this Policy; provided however that the maximum limit of the Insurer's liability for all such civil penalties shall be $100,000 regardless of the number of **Claims** made or **Insureds** covered under this Policy. This sublimit of Liability is part of and not in addition to the Limit of Liability set forth in 6 of the Declarations.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

---

CNA68912XX (7-12)
Page 1

Continental Casualty Company
Insured Name: Academy of Country Music

Policy No:  596415107
Endorsement  13
No:
Effective Date:  02/01/2016

© CNA All Rights Reserved.



## AMEND DEFINITION OF LOSS ENDORSEMENT
### (SUBLIMIT FOR 15 % OR LESS TAX PENALTY UNDER SECTION 4975 OF THE INTERNAL REVENUE CODE WITH NO RETENTION)

It is understood and agreed that the Glossary of Defined Terms, the definition of **Loss**, paragraph III. (starting with "Fiduciary Liability **Coverage Part**...") is amended to add the following subparagraph:

- the 15% or less tax penalty imposed upon an **Insured** under Section 4975 of the Internal Revenue Code of 1986; provided however that the maximum limit of the Insurer's liability for such penalty shall be $100,000 regardless of the number of **Claims** made or **Insureds** covered under this Policy. This sublimit is part of and not in addition to the Limit of Liability for the Fiduciary Liability **Coverage Part** stated in the Management Liability **Coverage Part** Declarations.  No retention applies to the coverage provided by this provision.

All other terms and conditions of the Policy remain unchanged.

> This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

CNA77257XX (12-13)
Page 1

Policy No: 596415107
Endorsement No: 14
Effective Date: 02/01/2016

Continental Casualty Company
**Insured Name:** Academy of Country Music

© CNA All Rights Reserved.



## AMEND DEFINITION OF LOSS ENDORSEMENT
### $100,000 SUBLIMIT FOR INSURABLE FINES AND PENALTIES UNDER SECTION 502(C) & PENSION
### PROTECTION ACT
### (FIDUCIARY LIABILITY COVERAGE PART)

It is understood and agreed that the Glossary of Defined Terms, the definition of **Loss**, paragraph **III.** (starting with "Fiduciary Liability **Coverage Part**...") is amended by the addition of the following new subparagraphs:

In addition, the Fiduciary Liability **Coverage Part**, **Loss** does not include civil or criminal fines, penalties, taxes, sanctions or forfeitures, imposed on an **Insured** whether pursuant to law, statute, regulation or court rule other than:

- those civil fines and penalties imposed under Section 502(c) of ERISA other than fines and penalties under the Pension Protection Act of 2006; provided however that the maximum limit of the Insurer's liability for all such fines and penalties shall be $100,000 regardless of the number of **Claims** made or **Insureds** covered under this Policy. This sublimit of Liability is part of and not in addition to the applicable Limits of Liability.

- those civil fines and penalties imposed under the Pension Protection Act of 2006; provided however that the maximum limit of the Insurer's liability for all such fines and penalties shall be $100,000 regardless of the number of **Claims** made or **Insureds** covered under this Policy. This sublimit of Liability is part of and not in addition to the applicability Limits of Liability.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

CNA81120XX (3-15)
Page 1

Policy No: 596415107
Endorsement No: 15
Effective Date: 02/01/2016

Continental Casualty Company
Insured Name: Academy of Country Music

© CNA All Rights Reserved.



## AMEND SUPPLEMENTARY PAYMENTS SECTION ENDORSEMENT
### $250,000 FOR COMPLIANCE COSTS
### (FIDUCIARY LIABILITY COVERAGE PART)

It is understood and agreed that the Fiduciary Liability **Coverage Part**, the section entitled **SUPPLEMENTARY PAYMENTS** is amended by the deletion of "$150,000" which is replaced with "$250,000".

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

CNA81081XX (3-15)
Page 1

Continental Casualty Company
Insured Name: Academy of Country Music

Policy No: 596415107
Endorsement No: 16
Effective Date: 02/01/2016

© CNA All Rights Reserved.



## MANAGED CARE SERVICES ENDORSEMENT
## (FIDUCIARY LIABILITY COVERAGE PART)

It is understood and agreed that solely with respect to the Fiduciary Liability **Coverage Part**, the Glossary of Defined Terms is amended as follows:

I.   The definition of **Administration Services** is amended by the addition of the following new paragraph following paragraph 8.:

- providing **Managed Care Services** to **Employees** or **Plan** participants or beneficiaries.

II.  The definition of **Wrongful Act**, paragraph III. (beginning with the phrase "When used in the Fiduciary Liability **Coverage Part**, **Wrongful Act** means"), subparagraph 1. is deleted in its entirety and is replaced with the following:

1.  any actual or alleged error, omission, negligent act, misstatement, misleading statement, neglect or breach of duty imposed upon an **Insured** by ERISA **or any Similar Act**, solely in such **Insured's** capacity as a **Fiduciary** of a **Plan** (including but not limited to the actual or alleged improper or negligent selection of a **Managed Care Services** provider), or any matter claimed against an **Insured** solely by reason of his, her or its status as a **Fiduciary** of a **Plan**;

III. The following new definitions are added:

**Managed Care Services** means the administration or management of a health care plan utilizing cost control mechanisms, including but not limited to utilization review, case management, disease management or the use of a preferred provider network; provided, however, that **Managed Care Services** does not include:

1.  any services provided by a health care plan administered by the **Insureds** (a "Self Administered Plan"); or

2.  any acts, errors or omissions in the rendering of or failure to render **Medical Services** by the **Insureds**.

**Medical Services** means health care, medical care, or treatment provided to any individual, including medical, surgical, dental, psychiatric, mental health, chiropractic, osteopathic, nursing or other professional health care; the use, prescription, furnishing or dispensing of medications, drugs, blood, blood products or medical, surgical, dental or psychiatric supplies, equipment or appliances in connection with such care; the furnishing of food or beverages in connection with such care; the furnishing of counseling or other social services in connection with such care; and the handling of or the performance of post-mortem examinations of human bodies; provided, however, that utilization review shall not be deemed **Medical Services**.

| | |
|---|---|
| CNA81618XXC (3-15) | Policy No: 596415107 |
| Page 1 | Endorsement No: 17 |
| | Effective Date: 02/01/2016 |
| Continental Casualty Company | |
| Insured Name: Academy of Country Music | |

© CNA All Rights Reserved.



All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

CNA81618XXC (3-15)
Page 2

Continental Casualty Company
Insured Name: Academy of Country Music

Policy No: 596415107
Endorsement No: 17
Effective Date: 02/01/2016

© CNA All Rights Reserved.



## DENIAL OR DELAY OF BENEFITS ENDORSEMENT
### (FIDUCIARY LIABILITY COVERAGE PART)

For purposes of clarification, the Fiduciary Liability **Coverage Part**, the section entitled **EXCLUSIONS**, the paragraph entitled **Exclusions Applicable to Loss Other than Defense Costs**, the exclusion entitled **Benefits Due** applies only to that portion of **Loss** other than **Defense Costs**.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the effective date of said Policy at the hour stated in said Policy, unless another effective date is shown below, and expires concurrently with said Policy.

Continental Casualty Company
Insured Name: Academy of Country Music

Policy No: 596415107
Endorsement No: 18
Effective Date: 02/01/2016

© CNA All Rights Reserved.



Thank you for purchasing EPL coverage from CNA.  As a CNA  EPack Extra - Not-For-Profit policyholder, you are entitled to a package of services, offered **at no additional charge**, to help you manage your business risks.

## Beyond HR<sup>sm</sup>

Beyond HR<sup>sm</sup> is an interactive, web-based platform that helps CNA policyholders train their employees on a variety of employment topics and develop employment policies, practices and procedures.

The Equal Employment Opportunity Commission, courts, and certain state laws have made it clear that employers must take all necessary steps, including periodic training, to prevent certain wrongful employment practices. To assist you in diminishing this risk to your company, CNA's Beyond HR<sup>sm</sup> provides complimentary training in areas such as preventing harassment,  wrongful termination and retaliation. For companies with employees in states where the law requires employers to provide sexual harassment prevention training, Beyond HR<sup>sm</sup> can assist your company in meeting these requirements by providing training in an interactive web-based format, with the capability to track employee participation through an easy to use, online mechanism. Comparable training and materials may cost hundreds or thousands of dollars if purchased separately.

Beyond HR<sup>sm</sup> also offers a variety of other features to assist your company in mitigating employment practices risks, such as:

- A searchable database of articles and checklists on important workplace topics.
- Refresher bulletins to support the online training modules.
- A model employment handbook and model policies and forms.
- Webinars and Best practices minutes podcasts on various workplace topics such as disability accommodation, bullying, social media and cyber crime.

Registration is quick and easy. From your web browser, navigate to www.cnabeyondhr.com, click on the "How to Register" link, and follow the instructions. Your CNA policy number will be required to register for the first time.

## H. R. HELP LINE

Eligible CNA policyholders can receive human resources consulting advice through the H.R. Help Line, provided by Jackson Lewis, LLP, a national law firm that specializes in employment law.  Simply have your human resources representative call the toll-free H. R. Help Line at 1-888-CNA-EPL1 (1-888-262-3751), identify your company as a CNA employment practices policyholder and provide your company's policy number.  The H.R. Help Line is serviced by attorneys who do not act as legal counsel to callers, but rather as human resources consultants, providing information regarding risk control strategies. You can begin using the Help Line today by following the enclosed instructions.

We think you will find these services to be valuable to your business. For more details, please go to our website at http://www.cnapro.com/html/riskmanagement.html or contact your insurance representative.....and **Thank You for Insuring with CNA.**

These services are available at no additional charge to most CNA employment practices liability policyholders.

The McCalmon Group, Inc. and  Jackson Lewis, LLP are  neither affiliates of CNA, nor an agent or broker.  As such, information reported to them is not notice to CNA of any claim or potential claim.  Please contact CNA or your insurance agent or broker  to report claims or potential claims.  Risk Management is your responsibility.  H.R. Web Training is not intended to substitute for your own risk management and compliance programs.

CNA Employment Practices Liability policies are underwritten by one of the CNA member property and casualty companies. One or more of the CNA companies provide the products and/or services described. CNA accepts no responsibility for the accuracy or completeness of this material and recommends the consultation with competent legal counsel and/or other professional advisors before applying this material in any particular factual situations.  This material is for illustrative purposes and is not intended to substitute for the guidance of retained legal or other professional advisors, or to constitute a contract.  Please remember that only the relevant insurance policy can provide the actual terms, coverages, amounts, conditions and exclusions for an insured. All products and services may not be available in all states and may be subject to change without notice.  Any references to non-CNA Web sites are provided solely for convenience and CNA disclaims any responsibility with respect thereto.  CNA is a registered trademark of CNA Financial Corporation. Copyright © 2013 CNA. All rights reserved.



## HOW TO ACCESS THE H.R. HELP LINE

CNA  EPack Extra - Not-For-Profit policyholders that purchase EPL receive the benefit of professional risk management consultation provided by Jackson Lewis, a national law firm that specializes in employment practices law.

CNA  EPack Extra - Not-For-Profit policyholders are entitled to human resources consulting advice for their Human Resources representative or senior managers, at no additional charge, through a toll-free number at **1-888-CNAEPL1 (1-888-262-3751)**.  They can receive proactive, effective information and strategies to help manage employment practices risks.

Policyholders who have accessed the H. R. Help Line find it to be a useful resource to properly understand and manage sensitive Human Resources issues. The service is of particular value to small businesses that may not have a dedicated Human Resources department. The following five areas appear to generate the most questions and discussions:

- Medical leave issues especially in regard to an employee who is currently on leave and may have a change in job status;
- Proper handling of a reduction in force – a common situation in today's economy;
- Allegations of unfair treatment or harassment;
- Handling employee disciplinary situations; and
- Unique circumstances that "textbooks" do not address.

The Jackson Lewis attorneys are first and foremost active listeners. They can offer valuable guidance on proper procedures (file documentation, best practices, etc), consideration of potential options, and development of a game plan.

For more information on CNA's Risk Control products and services, please visit http://www.cnapro.com/html/riskmanagement.html.  The H.R. Help Line is not for advice concerning specific legal matters. For these types of issues, we encourage you to speak to your own employment attorney.

Jackson Lewis is neither an affiliate of CNA, nor an agent or broker.  As such, information reported to Jackson Lewis is not notice to CNA of any claim or potential claim.  Please contact your insurance agent or broker to report claims or potential claims.

These services are available only to CNA policyholders that have employment practices liability coverage with CNA.

CNA accepts no responsibility for the accuracy or completeness of the services described herein or the information supplied by the HR Help Line or Jackson Lewis and recommends the consultation with competent legal counsel and/or other professional advisors before applying the information obtained in any particular factual situations. This material is for illustrative purposes and is not intended to substitute for the guidance of retained legal or other professional advisors, or to constitute a contract. Please remember that only the relevant insurance policy can provide the actual terms, coverages, amounts, conditions and exclusions for an insured. All products and services may not be available in all states and may be subject to change without notice. CNA does not endorse, recommend, or make any representations or warranties as to the accuracy, completeness, effectiveness, suitability, or performance of any of the products, applications, software, or programs identified herein.

CNA is a registered trademark of CNA Financial Corporation. Copyright © 2013 CNA. All rights reserved.

Electronically FILED by Superior Court of California, County of Los Angeles on 02/24/2020 04:20 PM Sherri R. Carter, Executive Officer/Clerk of Court, by N. Alvarez, Deputy Clerk

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Kirk Pasich (SBN 94242)  Kayla M. Robinson (SBN 322061)  PASICH LLP  10880 Wilshire Boulevard, Suite 2000  Los Angeles, CA 90024  TELEPHONE NO.: (424) 313-7860  FAX NO.: (424) 313-7890  ATTORNEY FOR *(Name):* Plaintiff Academy of Country Music | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: CENTRAL

CASE NAME:
Academy of Country Music v. Continental Casualty Company

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 20STCV07573 |
|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder  Filed with first appearance by defendant  (Cal. Rules of Court, rule 3.402) | JUDGE:  DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[✓] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✓] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [✓] punitive
4. Number of causes of action *(specify):* Three (3)
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*

Date: February 24, 2020
Kayla M. Robinson
(TYPE OR PRINT NAME)                          ▶ (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courtinfo.ca.gov*

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

| SHORT TITLE: Academy of Country Music v Continental Casualty Co. | CASE NUMBER |
|---|---|

# CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
### (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court.**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

### Applicable Reasons for Choosing Court Filing Location (Column C)

1. Class actions must be filed in the Stanley Mosk Courthouse, Central District.
2. Permissive filing in central district.
3. Location where cause of action arose.
4. Mandatory personal injury filing in North District.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.

7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office.
11. Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection, or personal injury).

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
|---|---|---|---|
| Auto Tort | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1, 4, 11 |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1, 4, 11 |
| Other Personal Injury/ Property Damage/ Wrongful Death Tort | Asbestos (04) | ☐ A6070  Asbestos Property Damage<br>☐ A7221  Asbestos - Personal Injury/Wrongful Death | 1, 11<br>1, 11 |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1, 4, 11 |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons<br>☐ A7240  Other Professional Health Care Malpractice | 1, 4, 11<br>1, 4, 11 |
| | Other Personal Injury Property Damage Wrongful Death (23) | ☐ A7250  Premises Liability (e.g., slip and fall)<br>☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.)<br>☐ A7270  Intentional Infliction of Emotional Distress<br>☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1, 4, 11<br>1, 4, 11<br>1, 4, 11<br>1, 4, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 1 of 4

| SHORT TITLE: Academy of Country Music v Continental Casualty Co. | | CASE NUMBER | |
|---|---|---|---|

| A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|
| **Non-Personal Injury/ Property Damage/ Wrongful Death Tort** | | |
| Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1, 2, 3 |
| Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1, 2, 3 |
| Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1, 2, 3 |
| Fraud (16) | ☐ A6013  Fraud (no contract) | 1, 2, 3 |
| Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1, 2, 3 |
|  | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 1, 2, 3 |
| **Employment** | | |
| Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1, 2, 3 |
| Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1, 2, 3 |
|  | ☐ A6109  Labor Commissioner Appeals | 10 |
| **Contract** | | |
| Breach of Contract/ Warranty (06)<br>(not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
|  | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2, 5 |
|  | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
|  | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1, 2, 5 |
| Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 5, 6, 11 |
|  | ☐ A6012  Other Promissory Note/Collections Case | 5, 11 |
|  | ☐ A6034  Collections Case-Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1, 2014) | 5, 6, 11 |
| Insurance Coverage (18) | ☑ A6015  Insurance Coverage (not complex) | 1, 2, 5, 8 |
| Other Contract (37) | ☐ A6009  Contractual Fraud | 1, 2, 3, 5 |
|  | ☐ A6031  Tortious Interference | 1, 2, 3, 5 |
|  | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | | |
| Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation          Number of parcels_____ | 2, 6 |
| Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2, 6 |
| Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2, 6 |
|  | ☐ A6032  Quiet Title | 2, 6 |
|  | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | | |
| Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 6, 11 |
| Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 6, 11 |
| Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2, 6, 11 |
| Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2, 6, 11 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 2 of 4

| SHORT TITLE: Academy of Country Music v Continental Casualty Co. | CASE NUMBER |
|---|---|

| | **A**<br>Civil Case Cover Sheet<br>Category No. | **B**<br>Type of Action<br>(Check only one) | **C** Applicable<br>Reasons - See Step 3<br>Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2, 8 |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2 |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1, 2, 8 |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ A6014  Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2, 5, 11 |
| | | ☐ A6160  Abstract of Judgment | 2, 6 |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2, 8 |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1, 2, 8 |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1, 2, 8 |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2, 8 |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2, 3, 9 |
| | | ☐ A6123  Workplace Harassment | 2, 3, 9 |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2, 3, 9 |
| | | ☐ A6190  Election Contest | 2 |
| | | ☐ A6110  Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ A6100  Other Civil Petition | 2, 9 |

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 3 of 4

| SHORT TITLE: Academy of Country Music v Continental Casualty Co. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address**: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address which is the basis for the filing location, including zip code. (No address required for class action cases).

| REASON:<br><br>□ 1. ☑ 2. □ 3. □ 4. ☑ 5. □ 6. □ 7.  □ 8. □  9. □ 10. □ 11. | ADDRESS:<br>5500 Balboa Boulevard |
|---|---|

| CITY: Encino | STATE: CA | ZIP CODE: 91316 | |
|---|---|---|---|

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the ___CENTRAL___ District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., §392 et seq., and Local Rule 2.3(a)(1)(E)].

Dated: February 24, 2020

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 02/16).

5. Payment in full of the filing fee, unless there is court order for waiver, partial or scheduled payments.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

LACIV 109 (Rev 2/16)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

Local Rule 2.3
Page 4 of 4

2019-GEN-014-00

**FILED**
Superior Court of California
County of Los Angeles

**MAY 03 2019**

Sherri R. Carter, Executive Officer/Clerk

By _____, Deputy
Rizalindo Mina

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| IN RE LOS ANGELES SUPERIOR COURT )<br>— MANDATORY ELECTRONIC FILING )<br>FOR CIVIL )<br> )<br> )<br> )<br>_____ ) | FIRST AMENDED GENERAL ORDER |

On December 3, 2018, the Los Angeles County Superior Court mandated electronic filing of all documents in Limited Civil cases by litigants represented by attorneys. On January 2, 2019, the Los Angeles County Superior Court mandated electronic filing of all documents filed in Non-Complex Unlimited Civil cases by litigants represented by attorneys. (California Rules of Court, rule 2.253(b).) All electronically filed documents in Limited and Non-Complex Unlimited cases are subject to the following:

1) **DEFINITIONS**

   a) **"Bookmark"**  A bookmark is a PDF document navigational tool that allows the reader to quickly locate and navigate to a designated point of interest within a document.

   b) **"Efiling Portal"**  The official court website includes a webpage, referred to as the efiling portal, that gives litigants access to the approved Electronic Filing Service Providers.

   c) **"Electronic Envelope"**  A transaction through the electronic service provider for submission of documents to the Court for processing which may contain one or more PDF documents attached.

   d) **"Electronic Filing"**  Electronic Filing (eFiling) is the electronic transmission to a Court of a document in electronic form. (California Rules of Court, rule 2.250(b)(7).)

2019-GEN-014-00

e) **"Electronic Filing Service Provider"**  An Electronic Filing Service Provider (EFSP) is a person or entity that receives an electronic filing from a party for retransmission to the Court. In the submission of filings, the EFSP does so on behalf of the electronic filer and not as an agent of the Court.  (California Rules of Court, rule 2.250(b)(8).)

f) **"Electronic Signature"**  For purposes of these local rules and in conformity with Code of Civil Procedure section 17, subdivision (b)(3), section 34, and section 1010.6, subdivision (b)(2), Government Code section 68150, subdivision (g), and California Rules of Court, rule 2.257, the term "Electronic Signature" is generally defined as an electronic sound, symbol, or process attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record.

g) **"Hyperlink"**  An electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or different document.

h) **"Portable Document Format"**  A digital document format that preserves all fonts, formatting, colors and graphics of the original source document, regardless of the application platform used.

2) MANDATORY ELECTRONIC FILING

a) Trial Court Records

Pursuant to Government Code section 68150, trial court records may be created, maintained, and preserved in electronic format.  Any document that the Court receives electronically must be clerically processed and must satisfy all legal filing requirements in order to be filed as an official court record (California Rules of Court, rules 2.100, et seq. and 2.253(b)(6)).

b) Represented Litigants

Pursuant to California Rules of Court, rule 2.253(b), represented litigants are required to electronically file documents with the Court through an approved EFSP.

c) Public Notice

The Court has issued a Public Notice with effective dates the Court required parties to electronically file documents through one or more approved EFSPs.  Public Notices containing effective dates and the list of EFSPs are available on the Court's website, at www.lacourt.org.

2

FIRST AMENDED GENERAL ORDER RE MANDATORY ELECTRONIC FILING FOR CIVIL

2019-GEN-014-00

   d) Documents in Related Cases

      Documents in related cases must be electronically filed in the eFiling portal for that case type if electronic filing has been implemented in that case type, regardless of whether the case has been related to a Civil case.

3) **EXEMPT LITIGANTS**

   a) Pursuant to California Rules of Court, rule 2.253(b)(2), self-represented litigants are exempt from mandatory electronic filing requirements.

   b) Pursuant to Code of Civil Procedure section 1010.6, subdivision (d)(3) and California Rules of Court, rule 2.253(b)(4), any party may make application to the Court requesting to be excused from filing documents electronically and be permitted to file documents by conventional means if the party shows undue hardship or significant prejudice.

4) **EXEMPT FILINGS**

   a) The following documents shall not be filed electronically:

      i) Peremptory Challenges or Challenges for Cause of a Judicial Officer pursuant to Code of Civil Procedure sections 170.6 or 170.3;

      ii) Bonds/Undertaking documents;

      iii) Trial and Evidentiary Hearing Exhibits

      iv) Any ex parte application that is filed concurrently with a new complaint including those that will be handled by a Writs and Receivers department in the Mosk courthouse; and

      v) Documents submitted conditionally under seal. The actual motion or application shall be electronically filed. A courtesy copy of the electronically filed motion or application to submit documents conditionally under seal must be provided with the documents submitted conditionally under seal.

   b) Lodgments

      Documents attached to a Notice of Lodgment shall be lodged and/or served conventionally in paper form. The actual document entitled, "Notice of Lodgment," shall be filed electronically.

//

//

2019-GEN-014-00

5) ELECTRONIC FILING SYSTEM WORKING PROCEDURES

Electronic filing service providers must obtain and manage registration information for persons and entities electronically filing with the court.

6) TECHNICAL REQUIREMENTS

a) Electronic documents must be electronically filed in PDF, text searchable format when technologically feasible without impairment of the document's image.

b) The table of contents for any filing must be bookmarked.

c) Electronic documents, including but not limited to, declarations, proofs of service, and exhibits, must be bookmarked within the document pursuant to California Rules of Court, rule 3.1110(f)(4). Electronic bookmarks must include links to the first page of each bookmarked item (e.g. exhibits, declarations, deposition excerpts) and with bookmark titles that identify the bookedmarked item and briefly describe the item.

d) Attachments to primary documents must be bookmarked. Examples include, but are not limited to, the following:

   i) Depositions;

   ii) Declarations;

   iii) Exhibits (including exhibits to declarations);

   iv) Transcripts (including excerpts within transcripts);

   v) Points and Authorities;

   vi) Citations; and

   vii) Supporting Briefs.

e) Use of hyperlinks within documents (including attachments and exhibits) is strongly encouraged.

f) Accompanying Documents

Each document acompanying a single pleading must be electronically filed as a separate digital PDF document.

g) Multiple Documents

Multiple documents relating to one case can be uploaded in one envelope transaction.

4

2019-GEN-014-00

h) Writs and Abstracts

Writs and Abstracts must be submitted as a separate electronic envelope.

i) Sealed Documents

If and when a judicial officer orders documents to be filed under seal, those documents must be filed electronically (unless exempted under paragraph 4); the burden of accurately designating the documents as sealed at the time of electronic submission is the submitting party's responsibility.

j) Redaction

Pursuant to California Rules of Court, rule 1.201, it is the submitting party's responsibility to redact confidential information (such as using initials for names of minors, using the last four digits of a social security number, and using the year for date of birth) so that the information shall not be publicly displayed.

7) ELECTRONIC FILING SCHEDULE

a) Filed Date

   i) Any document received electronically by the court between 12:00 am and 11:59:59 pm shall be deemed to have been effectively filed on that court day if accepted for filing. Any document received electronically on a non-court day, is deemed to have been effectively filed on the next court day if accepted. (California Rules of Court, rule 2.253(b)(6); Code Civ. Proc. § 1010.6(b)(3).)

   ii) Notwithstanding any other provision of this order, if a digital document is not filed in due course because of: (1) an interruption in service; (2) a transmission error that is not the fault of the transmitter; or (3) a processing failure that occurs after receipt, the Court may order, either on its own motion or by noticed motion submitted with a declaration for Court consideration, that the document be deemed filed and/or that the document's filing date conform to the attempted transmission date.

8) EX PARTE APPLICATIONS

a) Ex parte applications and all documents in support thereof must be electronically filed no later than 10:00 a.m. the court day before the ex parte hearing.

2019-GEN-014-00

1    b) Any written opposition to an ex parte application must be electronically filed by 8:30 a.m. the

2       day of the ex parte hearing. A printed courtesy copy of any opposition to an ex parte

3       application must be provided to the court the day of the ex parte hearing.

4   9) PRINTED COURTESY COPIES

5    a) For any filing electronically filed two or fewer days before the hearing, a courtesy copy must

6       be delivered to the courtroom by 4:30 p.m. the same business day the document is efiled. If

7       the efiling is submitted after 4:30 p.m., the courtesy copy must be delivered to the courtroom

8       by 10:00 a.m. the next business day.

9    b) Regardless of the time of electronic filing, a printed courtesy copy (along with proof of

10       electronic submission) is required for the following documents:

11        i)   Any printed document required pursuant to a Standing or General Order;

12        ii)   Pleadings and motions (including attachments such as declarations and exhibits) of 26

13          pages or more;

14        iii)   Pleadings and motions that include points and authorities;

15        iv)   Demurrers;

16        v)   Anti-SLAPP filings, pursuant to Code of Civil Procedure section 425.16;

17        vi)   Motions for Summary Judgment/Adjudication; and

18        vii)   Motions to Compel Further Discovery.

19    c) Nothing in this General Order precludes a Judicial Officer from requesting a courtesy copy of

20       additional documents. Courtroom specific courtesy copy guidelines can be found at

21       www.lacourt.org on the Civil webpage under "Courtroom Information."

22   10) WAIVER OF FEES AND COSTS FOR ELECTRONICALLY FILED DOCUMENTS

23    a) Fees and costs associated with electronic filing must be waived for any litigant who has

24       received a fee waiver. (California Rules of Court, rules 2.253(b)(), 2.258(b), Code Civ. Proc. §

25       1010.6(d)(2).)

26    b) Fee waiver applications for waiver of court fees and costs pursuant to Code of Civil Procedure

27       section 1010.6, subdivision (b)(6), and California Rules of Court, rule 2.252(f), may be

28       electronically filed in any authorized action or proceeding.

2019-GEN-014-00

1  11) SIGNATURES ON ELECTRONIC FILING

2  For purposes of this General Order, all electronic filings must be in compliance with California

3  Rules of Court, rule 2.257. This General Order applies to documents filed within the Civil

4  Division of the Los Angeles County Superior Court.

5

6      This First Amended General Order supersedes any previous order related to electronic filing,

7  and is effective immediately, and is to remain in effect until otherwise ordered by the Civil

8  Supervising Judge and/or Presiding Judge.

9

10  DATED: May 3, 2019 

11  KEVIN C. BRAZILE

    Presiding Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7



## Superior Court of California, County of Los Angeles

---

### ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

---

**What is ADR?**

ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration and settlement conferences. When ADR is done by phone or computer, it may be called Online Dispute Resolution (ODR). These "alternatives" to litigation and trial are described below.

**Advantages of ADR**
- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees and witness fees.
- **Keeps Control with the parties:** Parties choose their ADR process and provider for voluntary ADR.
- **Reduces stress/protects privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

**Disadvantages of ADR**
- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR and litigation and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

**Main Types of ADR:**

1. **Negotiation:** Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation:** In mediation, a neutral "mediator" listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all. Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

   **Mediation may be appropriate when the parties**
   - want to work out a solution but need help from a neutral person.
   - have communication problems or strong emotions that interfere with resolution.

   **Mediation may not be appropriate when the parties**
   - want a public trial and want a judge or jury to decide the outcome.
   - lack equal bargaining power or have a history of physical/emotional abuse.

LASC1

---

**How to arrange mediation in Los Angeles County**
Mediation for civil cases is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**
   Parties may contact these organizations to request a "Resource List Mediation" for reduced-cost or free (for selected cases) mediation in person or with ODR (by phone or online).

   - JAMS, Inc.: Case Manager (213) 253-9776 mdawson@jamsadr.com
   - Mediation Center of Los Angeles: Case Manager: (833) 476-9145 Info@mediationLA.org

   These organizations cannot accept every case and they may decline cases at their discretion.
   Visit www.lacourt.org/ADR.Res.List for important information and FAQs before contacting them.
   NOTE: This service is not available for family law, probate or small claims.

b. **Los Angeles County Dispute Resolution Programs**
   https://wdacs.lacounty.gov/programs/drp/
   - Free, day- of- trial mediations at the courthouse for small claims, unlawful detainers (evictions) and, at the Stanley Mosk Courthouse, limited civil. No appointment needed.
   - Free or low-cost mediations before the day of trial for these and other case types.
   - For ODR by phone or computer for small claims or unlawful detainer (eviction) cases before the day of trial, visit
     http://www.lacourt.org/division/smallclaims/pdf/OnlineDisputeResolutionFlyer-EngSpan.pdf

c. **Mediators and ADR and Bar organizations that provide mediation may be found on the internet.**

---

3. **Arbitration:** Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit http://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC):** MSCs are ordered by the Court and are often held close to the trial date. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit: www.lacourt.org/division/civil/settlement

**Los Angeles Superior Court ADR website:** www.lacourt.org/division/civil/settlement
**For general information and videos about ADR, visit** http://www.courts.ca.gov/programs-adr.htm

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California County of Los Angeles**



**Los Angeles County Bar Association Litigation Section**

**Los Angeles County Bar Association Labor and Employment Law Section**



**Consumer Attorneys Association of Los Angeles**



**Southern California Defense Counsel**



**Association of Business Trial Lawyers**



**California Employment Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:                    FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

CASE NUMBER:

1. This document relates to:
   ☐ Request for Informal Discovery Conference
   ☐ Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (Insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (Insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, briefly describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, briefly describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):                    FAX NO. (Optional):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i.   File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii.  Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i.   Also be filed on the approved form (copy attached);

      ii.  Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | | CASE NUMBER: |
|---|---|---|
| | | |

    iii.    Be filed within two (2) court days of receipt of the Request; and

    iv.    Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

  c.  No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

  d.  If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied.  If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

  e.  If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4.  If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5.  The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6.  Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7.  Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8.  References to "days" mean calendar days, unless otherwise noted.  If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR PLAINTIFF)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | FAX NO. (Optional): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h.  Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at **www.lacourt.org** under "*Civil*" and then under "*General Information*").

2.  The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
(INSERT DATE)                                    (INSERT DATE)
complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.  The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.  References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____          ➢ _____
(TYPE OR PRINT NAME)                                (ATTORNEY FOR PLAINTIFF)

Date:

_____          ➢ _____
(TYPE OR PRINT NAME)                                (ATTORNEY FOR DEFENDANT)

Date:

_____          ➢ _____
(TYPE OR PRINT NAME)                                (ATTORNEY FOR DEFENDANT)

Date:

_____          ➢ _____
(TYPE OR PRINT NAME)                                (ATTORNEY FOR DEFENDANT)

Date:

_____          ➢ _____
(TYPE OR PRINT NAME)                                (ATTORNEY FOR _____)

Date:

_____          ➢ _____
(TYPE OR PRINT NAME)                                (ATTORNEY FOR _____)

Date:

_____          ➢ _____
(TYPE OR PRINT NAME)                                (ATTORNEY FOR _____)

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                         FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least ____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

**STIPULATION AND ORDER – MOTIONS IN LIMINE**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR PLAINTIFF)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR DEFENDANT)

➢ _____
(ATTORNEY FOR _____)

➢ _____
(ATTORNEY FOR _____)

➢ _____
(ATTORNEY FOR _____)

## THE COURT SO ORDERS.

Date: _____

_____
JUDICIAL OFFICER

| SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS: Stanley Mosk Courthouse 111 North Hill Street, Los Angeles, CA 90012 | **FILED** Superior Court of California County of Los Angeles 02/24/2020 Sherri R. Carter, Executive Officer / Clerk of Court By: N. Alvarez Deputy |
| **NOTICE OF CASE ASSIGNMENT** **UNLIMITED CIVIL CASE** | |
| Your case is assigned for all purposes to the judicial officer indicated below. | CASE NUMBER: 20STCV07573 |

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

| | ASSIGNED JUDGE | DEPT | ROOM | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|
| ✓ | Gregory Keosian | 61 | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

Sherri R. Carter, Executive Officer / Clerk of Court

on 02/27/2020
(Date)

By N. Alvarez , Deputy Clerk

LACIV 190 (Rev 6/18)
LASC Approved 05/06

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007. They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross complaint may be filed by any party after their answer is filed. Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date. All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference. These matters may be heard and resolved at this conference. At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally-Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status. If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse. If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

Electronically FILED by Superior Court of California, County of Los Angeles on 02/27/2020 06:55 AM Sherri R. Carter, Executive Officer/Clerk of Court, by Colby Madden, Deputy Clerk
Case #:20-cv-03046-RGK-JC Document 1-1 Filed 04/01/20 Page 124 of 125 Page ID
#:128

1  Kirk Pasich (SBN 94242)
   kpasich@pasichllp.com
2  Kayla M. Robinson (SBN 322061)
   krobinson@pasichllp.com
3  PASICH LLP
   10880 Wilshire Boulevard, Suite 2000
4  Los Angeles, California 90024
   Telephone: (424) 313-7860
5  Facsimile: (424) 313-7890

6  Attorneys for Plaintiff

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   FOR THE COUNTY OF LOS ANGELES

10

| | |
|---|---|
| ACADEMY OF COUNTRY MUSIC, a California nonprofit corporation, | Case No. 20STCV07573 |
| Plaintiff, | Honorable Gregory Keosian<br>Dept. 61 |
| vs. | **NOTICE OF ADVANCE JURY FEE DEPOSIT** |
| CONTINENTAL CASUALTY COMPANY, an Illinois corporation; and DOES 1 through 10, | Complaint Filed: February 24, 2020 |
| Defendants. | |

19  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

20  **PLEASE TAKE NOTICE** that Plaintiff Academy of Country Music is hereby posting its

21  advance jury fee deposit in the amount of $150.00.

22  DATED: February 27, 2020              PASICH LLP

23                                        By: _____
24                                            Kayla M. Robinson
25                                        Attorneys for Plaintiff

26

27

28

_____
                    NOTICE OF ADVANCE JURY FEE DEPOSIT

Electronically FILED by Superior Court of California, County of Los Angeles on 03/02/2020 05:35 PM Sherri R. Carter, Executive Officer/Clerk of Court, by B. Ramos,Deputy Clerk

Case 1:20-cv-03046-RGK-JC Document 1-1 Filed 04/01/20 Page 125 of 125 Page ID #:129

1  Kirk Pasich (SBN 94242)
   kpasich@pasichllp.com
2  Kayla M. Robinson (SBN 322061)
   krobinson@pasichllp.com
3  PASICH LLP
   10880 Wilshire Boulevard, Suite 2000
4  Los Angeles, California 90024
   Telephone: (424) 313-7860
5  Facsimile: (424) 313-7890

6  Attorneys for Plaintiff

7

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              FOR THE COUNTY OF LOS ANGELES

10 | ACADEMY OF COUNTRY MUSIC, a      | Case No. 20STCV07573
   | California nonprofit corporation, |
11 |                                   | Honorable Gregory Keosian
   |          Plaintiff,               | Dept. 61
12 |                                   |
   |     vs.                           | **NOTICE OF ERRATA TO COMPLAINT**
13 |                                   | **FOR BREACH OF CONTRACT;**
   | CONTINENTAL CASUALTY COMPANY,     | **TORTIOUS BREACH OF THE**
14 | an Illinois corporation; and DOES 1 through | **COVENANT OF GOOD FAITH AND**
   | 10,                               | **FAIR DEALING; AND DECLARATORY**
15 |                                   | **RELIEF**
   |          Defendants.              |
16 |                                   | Complaint Filed: February 24, 2020

17

18      Plaintiff Academy of Country Music (the "Academy") hereby submits this errata to its

19 Complaint for Breach of Contract; Tortious Breach of the Covenant of Good Faith and Fair

20 Dealing; and Declaratory Relief (Demand for Jury Trial), which was filed on February 24, 2020,

21 in order to correct a clerical error with respect to the Exhibit 1 to the Complaint which was

22 inadvertently omitted from the filed Complaint. The Academy is hereby concurrently filing a

23 corrected Complaint for Breach of Contract; Tortious Breach of the Covenant of Good Faith and

24 Fair Dealing; and Declaratory Relief that attaches Exhibit 1 and makes no other changes.

25 DATED: March 2, 2020                       PASICH LLP

26
                                   By: _____
27                                         Kayla M. Robinson

28                                      Attorneys for Plaintiff

                        NOTICE OF ERRATA RE COMPLAINT